WILLIAM F. DAVIS, administrator, plaintiff in error, *vs.* JOSEPH C. HARPER *et al.*, defendants in error.

1. Sections 2598-9 and 1839-1844 of the Code, authorizing executors, administrators and guardians to be cited before the ordinary for settlement, and authorizing the ordinary to enforce his judgment by attachment or execution, is not in violation of that clause of the constitution which declares that the superior courts shall have exclusive jurisdiction in equity causes; nor of that clause which declares that the right of trial by jury shall remain inviolate, nor of the seventh amendment to the constitution of the United States, preserving the right of trial by jury in suits at common law when the amount is over $20 00.

2. A return to the ordinary by an administrator, that he had invested $2,000 in Confederate States bonds, though approved and ordered to record, is only evidence of the fact of investment, and is not evidence that a fund which originally went into the hands of the administrator in specie funds, had, without fault of his, gone into Confederate money.

3. Newly discovered evidence to authorize a new trial, should appear to be definite and certain upon the point at issue.

Constitutional law. Administrators and executors. Jury. Confederate money. New trial. Before Judge HALL. Newton Superior Court. March Term, 1874.

On May 3d, 1853, John Webb was appointed guardian of Caroline and Elizabeth Hodge, minor orphans of James Hodge, deceased, and from that time to the year 1864 inclusive, he made his returns to the court of ordinary. Caroline Hodge became the wife of Joseph C. Harper, and Elizabeth that of Joseph Mables. These parties obtained a rule from the court of ordinary requiring said guardian to appear for a settlement. An appeal to the superior court was entered by consent. Webb died, leaving his widow as the executrix of his will. Before she was made a party she also departed this life. William F. Davis was then appointed administrator *de bonis, etc.*, upon the estate of Webb, and became a party to this litigation.

When the case was called, counsel for the defendant moved to dismiss the proceeding upon the ground that the court of ordinary, where it was originally instituted, had no jurisdiction to hear and determine the same, as it involved matters of account, of which the superior courts, under the constitution, had exclusive cognizance; and further, because no trial by jury could have been had in such court.

The motion was overruled, and the defendant excepted.

The plaintiffs introduced the returns of Webb, as guardian; Barber's table, showing the values of Confederate money at various times during the late war, and closed. Upon said returns there appeared an investment of the money of the wards to the amount of $2,000 00 in Confederate bonds, of date January 1st, 1864.

The defendant introduced the aforesaid bonds.

The court charged the jury that Webb had the right to receive payment of debts due his wards in Confederate money, provided the receipt of the money was such an act as a prudent man would have done in the management of his own business, and if he did so receive any Confederate money and invest it in Confederate bonds under an order of the judge of the superior court, and the bonds were lost by the result of the war, without fault on his part, then he could not be charged with the amount thereof; that if the guardian received Con-

federate money and invested the same as the funds of his wards, in Confederate bonds or securities, after December 14th, 1863, without an order from the judge of the superior court of the circuit, such investment was at his own risk, and he is bound for the value of the Confederate money so invested by him, unless the investment was made in four per cent. Confederate bonds, under the act of March 21st, 1864, between said date and the 2d of the ensuing April.

To this charge the defendant excepted.

The jury found for each of the wards $1,630 60.    The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in refusing the motion to dismiss the proceedings upon the grounds stated.

2d. Because the court erred in the charge aforesaid.

3d. Because of newly discovered evidence to the effect that the money in the hands of the guardian which was invested in the Confederate bonds, was Confederate treasury notes, as will appear by the affidavit of E. H. Gay.

Gay swore that in January, 1856, Milledge Gay borrowed of Webb, as guardian, $530 00, and that deponent, as his administrator, repaid the same in Confederate treasury notes during the war; this to the best of his remembrance and belief.

The usual affidavit of the defendant was attached, showing such evidence to be newly discovered.

It was admitted that Gay was the son-in-law of Webb and the brother-in-law of the defendant, near to whom he lived.

The motion was overruled, and the defendant excepted.

J. J. FLOYD, for plaintiff in error.

CLARK & PACE; L. B. ANDERSON, for defendants.

McCAY, Judge.

1. It was elaborately argued in this case that sections 2598 and 2599 of the Code are in violation of the constitution, on two grounds:    1st. That they confer equity jurisdiction on

Davis *vs.* Harper *et al.*

the ordinary; and .2d, that they deny to the parties the right of trial by jury.    It is true that these provisions do confer on the ordinary a power that no statute had previously, in terms, conferred.    It is true, also, that it has for a long while been the practice in this state to call an administrator to a settlement in a court of equity.    But we are not clear that the probate court in this state did not always have the power thus conferred, though it must be admitted it was a power it did not exercise, at least not within the memory of any of the members of this court.    It is nevertheless true that the constitution of 1798 conferred upon the inferior court the powers of a court or ordinary, or register of probates, and it is unquestionable that at common law this officer had the power now in question: See Williams on Executors, 2d volume, page 1775 to 1783, where the subject is fully discussed.    Sir John Nicholl, in 1 Haygood, 535, declares this and the refusal to pay legacies to be an original jurisdiction of the ecclesiastical court, growing out of the fact that the administrator is the officer of the court, gives a bond and takes an oath to account, and he adds that this is the natural tribunal, and intimates that the jurisdiction of equity over it, on the ground that it is a trust, is rather a refinement, and at best, he says, it is only concurrent.    Nor is there anything in the other view, that it deprives the party of the right of trial by jury, as "heretofore used."    It does not appear, as we have seen, that in 1789 the right of trial by jury existed in these cases.    But the law gives a right of appeal: Constitution, article v., section 6; and under the statute, as we have held in 45 *Georgia,* 478, this right of appeal is without restriction, so that, at his option, the defendant may always have a jury trial if he desires it, or so may the heirs or legatees: 5 *Georgia,* 194.

2. The allowance of a return that the administrator had invested $2,000 00 in Confederate bonds, can, in the nature of it, only be a judgment that such an investment had been made.    Where the money came from was not for the then consideration of the ordinary.    Whether he got it under circumstances justifying him in the taking of such funds, could

and would not, in the nature of the thing, then be inquired into; all that was then before the ordinary and passed on was the fact of the investment. To give so wide a scope to such a judgment, even of a judge of the superior court permitting an investment, would be a dangerous rule, in view of the fact, so well known, that administrators and other trustees might thus easily have invested their own debts to the estates they represented.

3. There is nothing in the new testimony to justify a new trial. It is wholly uncertain as to time and amount, and if it had been before the jury it would hardly have affected the verdict. It was in the power of the movant to have made the statement plain and definite if the witness could do so. Suppose a new trial were granted, and the witness were to appear as a witness and make his statement as indefinitely as he does now, what would his evidence be worth?

Judgment affirmed.