THE EAGLE AND PHŒNIX MANUFACTURING COMPANY, plaintiff in error, *vs.* J. RHODES BROWNE, defendant in error.

1. Witnesses not experts, but who give the reasons for their opinion, may testify to the value of services described to them in their examination and proved by other witnesses to have been rendered by a person in the line of his special business, they knowing his professional standing, and having employed him or been employed with him elsewhere, and there seen the actual results of his skill, though knowing nothing personally of the particular services now in question.

2. Opinion of the supreme court declaring a previous verdict excessive, is not to be read to the jury on the new trial—certainly not, unless both trials are on the same evidence,

3. Officer of a corporation, accepting and serving under a known by-law providing that official salaries are to be fixed by the president and directors, is to be understood as undertaking the performance of his duties for such salary as may be established in a fair and honest execution of the by-law.

Witness. Experts. Evidence. Corporations. Before Judge KIDDOO. Muscogee Superior Court. November Term, 1876.

Browne brought assumpsit against the Eagle and Phœnix Manufacturing Company for $21,000.00, alleged to be due him for services rendered from May 4th, 1866, to June 4th, 1868, in planning, preparing and organizing for the erection of defendant's factory, and in superintending, for the period aforesaid, the mounting and putting in operation its machinery, and in generally supervising the manufactures fabricated and sold by the defendant, etc. The defendant pleaded the general issue and the payment of $11,107.07 in satisfaction and discharge of said claim.

The jury found for the plaintiff $3,436.59, with interest from June 4th, 1868. The defendant moved for a new trial upon numerous grounds, which will be taken up *seriatim*.

The case turned entirely upon the value of the plaintiff's services, if, under the by-laws and the consequent action of

the board of directors, he was entitled to recover upon a *quantum meruit.* Upon the question of value the evidence was voluminous and conflicting; it will only be noticed so far as is necessary to illustrate the errors complained of.

The first ground of the motion for a new trial was based on the fact that the court allowed the plaintiff to read in evidence the answer of James A. Farley to the sixth and seventh interrogatories, as follows:

To the sixth, "I think his services, under the circumstances, to do the work he did, worth at least $10,000.00 per annum."

To the seventh, "I do not think the amount sued for excessive."

The defendant objected to these answers for the following reasons: first, that it did not appear that the witness was an expert; second, nor that he knew the character and extent of the services; third, nor the value of such services.

This witness also testified that plaintiff's reputation was that of a skilful manufacturer and manager of a first-class manufactory; that he, witness, had no personal knowledge of manufacturing; that plaintiff's control and management of the Tallassee factory has given satisfaction to the receivers, of whom he, witness, was one; that he has been associated with plaintiff in the management of the Tallassee factory since January 23d, 1874; that plaintiff was engineer and superintendent of the manufacturing department; that his duties have been discharged skilfully and satisfactorily to the receivers. That witness has never been engaged in manufacturing except as receiver; that he is a banker; that he is not sufficiently acquainted with manufacturing or machinery to say that he is a competent judge of the skill and capacity of the plaintiff. That his judgment of the value of plaintiff's services is based upon what has been paid for similar services in other cases; that he has no personal knowledge of the value otherwise; that he thinks such services would have commanded a salary of $10,000.00 more readily in 1867, 1868 and 1869 than now.

The second ground of the motion was substantially the same as the first.

The third was because the court allowed the plaintiff to read in evidence the answer of Bickett D. Fry to the sixth interrogatory, the defendant objecting upon the same grounds as to the answer of Farley.

The answer was as follows: "I think his services in the capacity named would be valuable to any corporation, considering that during the period he was employed such services were paid for at higher rates than now; I do not consider the amount sued for excessive."

This witness also testified that plaintiff was for three years consulting engineer of the Tallassee factory, of which witness was then, and is still, secretary and treasurer; that he very frequently visited the factory in such capacity, and had frequent opportunities of judging of plaintiff's skill as a manufacturer; that he has always regarded him as one of the most skilful and experienced mill managers and engineers in the south.    That witness was connected with the Tallassee factory from 1869 to 1873, during the presidency of Benj. H. Micon; that it met heavy losses, but not from the management or instrumentality of the plaintiff.    The mill did turn out a proper quantity of goods, and of the proper quality, while Micon was president and plaintiff was giving directions in connection with the management; that the mill was unsuccessful from financial mismanagement wholly. That witness is the agent and executive officer at the factory; that the production of the mill is large in quantity and good in quality; that plaintiff, as consulting engineer and as receiver, has exhibited skill and good judgment.    That he has known persons to be employed to do the character of work for which plaintiff is suing, but does not know what compensation they received.    That he judges the value of the compensation by the importance of the work, and the skill and experience necessary to execute it; that witness could not do such work himself, but knows others who could; that he is receiving $2,000.00 *per annum.*

The fourth ground was substantially the same as the third.

The fifth was because the court would not allow counsel for defendant to read as a part of his argument to the jury, or otherwise, this case as reported in 53 *Ga. Rep.*, 153, on writ of error from a former trial.

As to this the presiding judge says, that he would not allow the case read, as the facts reported were different, and the opinion itself is not one of law, but an expression of the judge as to facts, which might improperly influence the jury.

The sixth ground was based on the following charge of the court :

" It is claimed by the defendant in this case, that, although the plaintiff may have done some work for it, he did it under certain circumstances and under employment which constituted him an officer of the company, and that it had the right to fix his salary, and did fix it, so as to determine the question as to how much he was to receive for the services he did actually perform.  If you believe that the plaintiff agreed with the defendant to, and did fill a certain office for the company, and that the services that he did perform were duties of that office in the company, and that the agreement at the time he took such office was, that the board of directors might, for that time, afterwards fix what his salary should be, and if you believe that he requested them after that time to fix his salary, and that they did fix it, by virtue of such an agreement as this, made by him with the company, to fill a certain office of the company, and that they did fix it at a certain amount, then he would be bound by such an agreement as that; provided the company, in fixing that amount, did not fix it at such an unreasonably low price as to show there was unfairness to him in fixing that amount.

" A by-law of the company that the board of directors shall fix the salaries of its officers, without something more, some agreement that they should fix it after he entered the office,

would not compel one performing the duties of such office to receive the salary they fixed for the services which he did perform prior to that time in the office, and if he had performed them without such an agreement as I have described, and knew such by-law existed, he would be entitled to compensation for whatever his services were reasonably worth in office up to the time they did fix a certain salary for that office. If he performed any services for them after they did fix that salary and notified him of the fact that they had fixed the salary, then he would be entitled to compensation after that time in the same proportion as the salary was to a year, for the time he served after they did fix it and notified him, unless he notified the company that he would not accept such salary, and then, by request, or their action or conduct, they induced him to stay and serve them longer in that capacity.

" If they, by their conduct, induced him to serve them longer, after he had distinctly refused to accept the salary, then he would be entitled, also, after that time, to have compensation for what his services were reasonably worth."

The by-laws referred to in the charge were as follows :

"Sec. 5. At the first meeting of the directors subsequent to their election they shall elect one of their own members president of the company, and they shall also elect a secretary and treasurer, who shall be a stockholder in the company.

"Sec. 10. The president and directors shall appoint such officers as may be considered requisite for the service of the company, who shall be removable by the board. They shall fix the compensation of the secretary and treasurer, and the other officers required. In their discretion they may or may not require bonds of the several officers of the company."

There was evidence to show that these by-laws were prepared by a committee of three, one of which was the plaintiff, appointed by the stockholders for that purpose ; that they were drawn on May 3d, 1866, and reported on the 10th of the same month ; that most of these laws were suggested by plaintiff, and the 10th was adopted on his motion ; that plaintiff was a director of the defendant from the beginning ; that about the 10th of March, 1868, plaintiff

requested that the board of directors should fix his salary ; that a meeting was accordingly called, on the 12th of the same month, and $4,500.00 per annum compensation allowed him.

As to what the plaintiff said at the time the information as to the action of this meeting was communicated to him, the evidence is conflicting, but that for the defendant would indicate that he said if the directors would give him $5,000.00 per annum he could operate with them pleasantly, otherwise he would resign and sell his stock.   He insists that he demanded then $8,000.00 per annum.

Plaintiff resigned and sold his stock soon after.   He remained in his position until defendant could secure the services of some one else, to-wit: until June 1st, 1868.   Notwithstanding the fact that the plaintiff had overdrawn his salary, if he was bound by the amount fixed by the directors, yet the books were balanced by the defendant because plaintiff had acted so " cleverly " in remaining until his place could be filled, and on account of the desire of the directors to part pleasantly with him.   On May 1st, 1872, this suit was commenced.

The motion was overruled, and the defendant excepted.

PEABODY & BRANNON; JAMES JOHNSON, for plaintiff in error.

R. J. MOSES; M. H. BLANDFORD, for defendant.

BLECKLEY, Judge.

1. What would be a reasonable salary for services performed by the plaintiff in the line of his special business, may be shown by witnesses who have employed him or been employed with him, and have seen the results of his skill, and who know his professional standing, although the witnesses are not experts, and although they know nothing of the particular services sued for, except from a general

description of the same contained in the interrogatories in answer to which their evidence is given. That testimony from such sources might be of little weight, would not render it inadmissible, the witnesses giving, with their opinion, the reasons on which it is founded. Such evidence is barely admissible. Doubtless it ought to weigh no great deal with the jury. It goes rather to what the plaintiff is capable of earning, than to what he has actually earned in serving the defendant.

2. When the only point ruled by the supreme court on a previous writ of error in the same case was, that the finding of the jury was excessive in amount, the official report of that decision should not be read to the jury on the new trial, as argument or otherwise, unless the evidence be the same on the latter as it was on the former trial. The jury should act on the evidence before *them*, and not on that which was before a previous jury. Even if the evidence was the same, it is doubtful whether the opinion of this court, any more than that of the superior court, ought to be used to overbear the independent thought of the jury in fixing the amount for which their verdict should be rendered on the facts proved. There is no presumption that a second jury would go to any excess because the first did.

3. When, at the time an officer of a corporation accepts his appointment and enters upon his duties, there is a by-law in force (of which he has knowledge) to the effect that the compensation of each officer is to be fixed by the president and directors, he is (in the absence of any express agreement to the contrary) to be understood as consenting to serve for whatever rate of compensation the president and directors, in a fair and honest execution of the by-law, may establish. If he should serve for a period, long or short, before the president and directors had fixed any salary for his position, he would, by his own choice, anticipate their action; and at whatever time, during his continuance in office, they might act, he would be bound thereby, both as to the past and the future. Were they to decline or un-

reasonably postpone proper action in the premises, he would have the remedy of *mandamus* to oblige them to a performance of duty. But if the disbursing officer of the corporation desired to pay him on any basis, other than that contemplated by the by-law, he would have no right to do it, since the by-law is obligatory alike upon all the officers and members of the corporation. Such a by-law is not only within the legal competency of the corporation to establish, but is eminently right and proper. The record shows that it was adopted, not only with the plaintiff's consent, but at his suggestion.

Judgment reversed.