THE CHATTANOOGA, ROME AND COLUMBUS RAILROAD COMPANY *v.* HUGGINS, and *vice versa*.

1. Under the facts in the record, the court did not err in refusing to dismiss the motion for a new trial, the motion having originated before the end of the term of the court at which the verdict was

rendered, and all acts done by the judge or the movant whilst the court was in temporary recess, having been either repeated or tacitly recognized and adopted later during the same term and whilst the court was in actual session, so as to cure all irregularities.

2. The declaration set forth a cause of action, and there was no error in overruling the demurrer thereto.

3. After stating facts within the knowledge of the witness tending to show that the plaintiff was seriously disabled by an injury, the witness may express his opinion that the plaintiff " has been unable to perform any duties which required the slightest physical exertion, and during his severe attacks he was unable to do anything, and at his best cannot do anything other than jobs of very light nature."

4. Interrogatories which assume hurt, suffering or loss of time, where these are involved in the action, are leading.

5. A railway company in coupling a freight-train to a passenger-car having passengers already in it to be carried by the train, is bound to exercise extraordinary diligence,—that is, such diligence as very prudent persons would use with a like train under like circumstances, and the court may instruct the jury that the rarity of an injury will furnish no excuse to the company for omitting that degree of diligence in the particular instance. That the charge given on this question was somewhat obscure will not vitiate the verdict, for when construed in the light of the whole charge it could be understood correctly by the jury.

6. A passenger who has been carried on the line of a railway in a passenger-car which that company switches off upon the line of a connecting railway, sustains the relation of passenger to such connecting railway company during the time the car is stationary and he remains in it, if according to the usual course of business that company is accustomed to receive presently cars so delivered to it, couple them into its trains and carry them over its own line. This is true whether the passenger, at the time of being injured, has procured a ticket or paid his fare for a passage over the connecting line or not.

7. After instructing the jury that the plaintiff was bound to use ordinary diligence to avoid being injured, it is not error to refer it to the jury whether or not, under the circumstances, he ought to have left the car or taken the seat nearest to where he stood when he discovered the danger. This being a matter for the opinion of the jury, in the light of the evidence, it could be referred to them under the phraseology "if you think," etc.

8. To charge the jury that the injury would be accidental if neither party was negligent, is not error.

9. Reading the whole charge together, the instructions given as to the apportionment of damages if both parties were at fault, did not mislead the jury.

10. In the absence of a request, there was no duty on the court to charge the jury that the defendant was not bound to produce all of the agents and employees who were connected with the running of the train.

11. It not appearing that the court failed to do its duty by rebuking counsel who made grossly improper remarks in his argument to the jury, and by stopping him and warning the jury to disregard what he had said, the Supreme Court will not presume that the superior court omitted any duty in this respect, and therefore the misbehavior of the plaintiff's counsel, though gross, is not, so far as appears from the record, cause for a new trial.

12. The plaintiff having testified at the trial that he could easily have avoided being injured, and having failed to explain in his testimony why he omitted to do so, and his declaration alleging that he was injured after he discovered that the danger was imminent, a new trial should have been awarded on the general grounds of the motion, though it was not positive error to deny the motion for a nonsuit.

March 31, 1892.   Argued at the last term.

New trial. Railroad passenger. Evidence. Negligence. Charge of court. Before Judge JANES. Haralson superior court. January adjourned term, 1891.

Reported in the decision.

W. W. BROOKES and W. T. TURNBULL, for the railroad company.

REID & GROW and ADAMSON & JACKSON, *contra.*

SIMMONS, Justice.

1. In this case there are three bills of exceptions. The first we shall deal with is the cross-bill of the defendant in error, in which he excepts to the overruling of his motion to dismiss the motion for a new trial. It appears from the statement of facts that the case was tried and the verdict rendered on February 5th, 1891, during the January adjourned term of Haralson superior court. On February 7th, 1891, the adjourned term was again adjourned, the court ordering that it stand adjourned until May 4th, 1891, and then remain in session two weeks unless sooner adjourned, and that the traverse

jury which had been drawn appear and serve at the adjourned term. On February 27th, 1891, the defendant made the motion for a new trial, applying to the judge of the court, who was then holding Polk superior court in its regular spring term (both the counties mentioned being in the same circuit), and the judge granted a rule *nisi* returnable March 21st, 1891. The allegations of fact in the motion and the brief of evidence tendered with it, were duly approved by the judge on February 27th, and ordered filed, and were filed. On February 28th, 1891, counsel for plaintiff acknowledged service of the motion and rule and brief of evidence, and waived copy and filing of the brief, and suggested to counsel for the defendant that the hearing of the motion be continued to the adjourned term of Haralson superior court ordered for May 4th, to which counsel for the defendant agreed, and the judge passed an order on March 21, 1891, continuing the motion to said adjourned term. On May 4th, during the adjourned term and in open court, the court again passed an order continuing the motion to the adjourned term ordered to be held on May 12th, 1891, the court being again adjourned until that day, and ordering plaintiff to show cause why the new trial should not be granted; upon which order plaintiff acknowledged service May 6th, 1891. On May 7th, 1891, the judge stated in open court to counsel for movant that the court would not be adjourned, that the juries would be discharged, but as usual in that circuit the court and term would be held open for the purpose of allowing motions for new trial to be made. When the motion came on for hearing on May 12th, 1891, counsel for plaintiff moved to correct certain allegations in one of the grounds of the motion for a new trial, which, after hearing evidence in regard thereto, the judge allowed. Before proceeding further in the hearing and consideration of the motion, plaintiff's counsel moved

v 89-32

to dismiss the motion for a new trial, upon the ground that it was not applied for and made during the term at which the case was tried, and on the further ground that no brief of evidence in the case was prepared and tendered to the court for approval and filing, nor filed, nor any waiver thereof had during the term at which the case was tried.

Under these facts the court did not err in refusing to dismiss the motion for a new trial. The motion originated before the end of the term of the court at which the verdict was rendered; and all acts done by the judge or the movant whilst the court was in temporary recess were either repeated, or tacitly recognized and adopted, later during the same term and while the court was in actual session, so as to cure all irregularities.

2. The plaintiff in error, in one of its bills of exceptions, complains of the overruling of its demurrer to the declaration and its motion to nonsuit, and in the other, of the overruling of its motion for a new trial. There was no error in overruling the demurrer to the declaration. The facts alleged in the declaration are, in substance, as follows: Huggins, the plaintiff, took passage *via* the Georgia Pacific railway on a train known as the "Tallapoosa accommodation," from Atlanta to Kramer. One coach of the train, that on which he was a passenger, was detached from this accommodation train by the employees of the Georgia Pacific Railway Company, and by them placed on the side-track of the defendant, which connects their track with the track of the Georgia Pacific at Kramer, to be hauled by the defendant's train to Carrollton, which was the point to which petitioner was bound, he being then and there a passenger on said car on the road and track of defendant. The car having been transferred backward on the side-track, the seats therein were backward and the backs locked so that they could not be turned. There

was a lady passenger on the car also bound for Carrollton, and petitioner went forward to request the conductor, or some employee of the defendant, to unlock and turn the seats for her accommodation and for petitioner's, when he saw the train of defendant coming up the track to couple on the car. The grade going north on the track is very steep, and petitioner charges it to be negligent and unlawful. The train approaching the car, for the purpose of coupling as stated, was the freight-train of defendant, due at Carrollton at nine o'clock P. M., and the time now being after dark in the evening of the day. When petitioner saw the train backing it was approaching the car at very great and negligent speed, and petitioner hurried back into the car to warn the lady of the approaching danger and to get a seat himself and provide against the shock now evidently imminent; but just as he turned from the aisle of the car between two seats, the train being negligently and carelessly operated and run by defendant, came with such great force against the car in which petitioner was then a passenger of defendant, and which was to constitute a part of its train to Carrollton, that he was thrown violently forward and upon the corner of the back of the car seat, striking thereon and falling therefrom across the aisle of the car, which greatly hurt him, etc., and so injured him that when he reached Carrollton, having paid his fare to the conductor and gone there on said train, he had to be hauled to his home, etc. He further alleged the nature of his injuries, suffering, earnings, loss of time, expense, etc.

To this declaration the defendant demurred on the following grounds, to wit: that the declaration was insufficient in law, and did not set forth a sufficient cause of action; that it showed on its face the injury was the result of an unavoidable accident; that it showed plaintiff could have avoided defendant's negligence by the

use of ordinary care; and it showed that defendant exercised extraordinary diligence, and that the injury resulted solely from the negligence of the plaintiff.

We think the declaration did set forth a cause of action. The negligence of the company is distinctly alleged. It is stated that the train of the defendant approached " at very great and negligent speed" the car occupied by the plaintiff and other persons, as passengers of the defendant, and that "being negligently and carelessly operated and run by the defendant," it "came with such great force against the car" that the plaintiff was thrown violently forward and injured in the manner alleged. It was unnecessary for the plaintiff to show that he was without fault; for when it was shown he was injured as above stated, the presumption arose that the company was at fault, and the burden was upon it to establish either its own freedom from fault, or that the plaintiff could have avoided the injury. Code, §§3033, 3034. It is not apparent from the declaration that the plaintiff in the exercise of ordinary care could have avoided the injury. It appears that while in the car, where as a passenger he had a right to be, and while the car was standing still, he went forward to have the seats turned in their proper position, for himself and a lady passenger, and that when he saw the train approaching this car, he hurried back into the car to warn the lady and to get himself a seat and provide against the shock. True he saw there was danger, but it does not appear from the declaration that he failed to get a seat as soon as he could, or that he did not do all that proper care and prudence would have suggested under these circumstances, to avoid the danger. And whether or not he did exercise such care would be a question for the jury. The court did not err, therefore, in overruling the demurrer. The denial of the motion to nonsuit will be dealt with in another part of the opinion.

3. Coming now to the special grounds of the motion for a new trial, we find it complained of as error, that the court permitted the plaintiff to read in evidence, over defendant's objection, the answers of one New to an interrogatory, as follows: "Since that date he (meaning the plaintiff) has been unable to perform any duties which require the slightest physical exertion, and during his severe attacks he was unable to do anything, and at his best could not do anything other than jobs of a very light nature." This was objected to as expressing merely the conclusion of the witness, who was not a physician or expert. It appeared, however, from other parts of his testimony, that he saw the plaintiff the day after the injury, and that the latter was then suffering very much from a hurt in his right side; that he sat with him two nights and went several times for a physician; and that when plaintiff was at home and took one of his spells, which he frequently had, he always sent for this witness, who found him suffering very much. After testifying to facts of this kind, tending to show that the plaintiff was seriously disabled by the injury, it was allowable for the witness to express his opinion as given in the answer above quoted. See *Atlanta & West Point R. Co.* v. *Johnson*, 66 *Ga.* 259(2).

4. Other grounds of the motion complain that the court erred in admitting in evidence, over defendant's objection filed in writing before the issuing of the commission, the answers to certain interrogatories, some of the interrogatories being as follows, and the others of like character: "What do you know of any injury plaintiff sustained about the 18th of October, 1888, if anything? How was he hurt? When did you first see him, and how was he suffering? How has he suffered since?" "How much time has plaintiff lost from his work on account of his injury, and what was that time worth to him?" "How many times, if any, has plain-

tiff had to quit work since the injury, and from what cause? State particularly as to the time, if you know, and how he was affected, and how did he suffer?" etc. These interrogatories were objected to on the ground that they were leading, and assumed the existence of material facts which had not been proved. We think the objection was well taken.

5. The next ground complains of an addition made by the court to one of the defendant's requests, in giving the same in charge to the jury. The language of the request was as follows: "If this was an injury of a character never before known to occur, and therefore not an injury which might reasonably have been expected under the circumstances; and if in coupling and uncoupling, the machinery was handled as machinery of like character would be handled by a prudent and thoughtful person in the exercise of extreme care and caution, and the jolt was no greater than the jolt usual under such circumstances, then, even if the plaintiff was injured thereby, the jury would be authorized to find for the defendant." To this the court added: "The defendant would be bound to use the same extraordinary care and diligence, and if it failed to use that care and diligence, it would be liable to the plaintiff." This was alleged to be error, "because vague and indefinite and bearing no proper relation to the request; and because it misled the jury and tended to confuse in their minds the degree of care incumbent on the defendant, and also completely changed and withdrew from them the doctrine of unavoidable accident." Although the language added may not be entirely clear, it is probable that what is said as to "the same extraordinary care and diligence," referred to what had already been said as to extraordinary diligence, in the preceding portion of the charge, and that the court meant to explain that, even though the injury may have been of a

character never before known to occur, this would not excuse the omission of that degree of diligence. Construed in the light of the whole charge, we think the import of this language could be understood correctly by the jury; and thus understood, it exacted no greater degree. of diligence of the company than the law required; certainly no greater degree than was required under the uncontested facts of this case. Here a freight-train was backing for the purpose of coupling to a passenger-car which had passengers already in it, to be carried by the train; and there could be no reason for exempting the railroad company from the exercise of that extraordinary diligence which is required of every carrier of passengers, that is, such diligence as very prudent persons would use with a like train under like circumstances. What is said on this point disposes also of other grounds of the motion, which complain that extraordinary diligence was not the measure. of the defendant's duty to the plaintiff.

6. Certain instructions of the court as to the duty of a railway company to passengers are objected to, it being contended that as the plaintiff, at the time of being injured, had not procured a ticket or paid his fare for passage over the defendant's road, the defendant was under no duty to him as a passenger. On this subject we quote the following from a leading work on carriers: "It is universally agreed that the payment of the fare, or price of the carriage, is not necessary to give rise to the liability. The carrier may demand its prepayment, if he chooses to do so; but if he permits the passenger to take his seat or enter his vehicle as a passenger, without such requirement, the obligation to pay will stand for the actual payment, for the purpose of giving effect to the contract with all its obligations and duties. Taking his place in the carrier's conveyance, with the intention of being carried, creates an implied agreement

upon the part of the passenger to pay when called upon, and puts upon him a liability to the carrier, from which at once springs the reciprocal duty and responsibility." Hutch. Carr. §565. And it is held that the relation of passenger may thus arise although the conveyance has not started on its journey. See 2 Shearm. & Redf. Neg. §§488, 490 ; Dewire *v.* Boston and Maine R. R., 2 Lawy. Rep. Annot. 166 (Mass.) ; 19 N. E. Rep. 523 ; Cleveland *v.* New Jersey Steamboat Co., 68 N. Y. 306. In the present case it appears that the plaintiff, who was on his way from Atlanta to Carrollton, left Atlanta that afternoon, as a passenger in this particular car, on another line of railway, which connected with the defendant's line at the station where the injury occurred ; from which station he was to be carried by the defendant, in the same car, over its own line, to his destination ; the defendant being accustomed, in the usual course of business, to receive on their arrival and couple to its trains cars so delivered to it, and to carry them as it did on this occasion. Under these circumstances it is clear that the plaintiff sustained the relation of passenger to the defendant at the time of his injury, whether he had procured a ticket or paid his fare over the defendant's line or not.

It is also complained that the court expressed an opinion that the plaintiff was a passenger and had been injured, the jury being instructed that the plaintiff "claims damages for which he suffered while a passenger on the train of the defendant." In this the judge merely stated what the plaintiff *claimed*, and this he had a right to do. *Elder* v. *Cozart*, 59 *Ga.* 199; *Weekes* v. *Cottingham*, 58 *Ga.* 559.

7. It is complained that the court erred in charging: "You are to determine from the evidence in the case whether he could have avoided the injury by the use of ordinary diligence, by getting off the car or by taking

the first seat in the car, he seeing and expecting the danger, if you think under the circumstances he ought to have done this in order to prevent the injury." This was alleged to be error, because the propriety of the plaintiff's conduct must be measured by the duties incumbent upon a man of ordinary prudence and not his own judgment, nor the judgment of the jury as to what they thought incumbent upon him. There was no error in this instruction. Whether or not the plaintiff, under the circumstances, ought to have left the car or taken the seat nearest to where he stood when he discovered the danger, was a matter for the opinion of the jury in the light of the evidence, and could be referred to them as was done in the charge, under the phraseology, "if you think," etc.

8. The following instruction is complained of: "If the injury resulted from an accident, without negligence on the part of either party, the railroad company would not be liable and the plaintiff could not recover." This was alleged to be error because it limited the existence of unavoidable accident to the absence of negligence on the part of both plaintiff and defendant. There is no merit in this objection. If the negligence of either party contributed to or caused the injury, it did not result from accident.

9. The 15th, 16th and 18th grounds of the motion allege error in the instructions of the court as to the apportionment of damages if both parties were at fault. As to these grounds it is unnecessary to say more than that, taking the instructions complained of in connection with the remainder of the charge, the law on this subject was fairly presented, and these instructions did not mislead the jury.

10. It is complained that the court erred in failing to charge, that in cases of this character the law does not impose upon the defendant the burden of producing all

its agents and employees who were connected with the running of the train. This was alleged to be error, because the plaintiff's counsel contended, throughout their argument, that the failure of the defendant to produce its brakeman and conductor raised a conclusive presumption that the defendant's said agents were negligent, and would have so testified had they been present. It does not appear that any request was made to the court to charge on this point, and the omission of the court to do so was not error.

11. Another ground of error is, that counsel for the plaintiff, in his opening argument, made the following appeal to the prejudices of the jury: "Gentlemen of the jury, we are asking you for $20,000 and we want it. That is a heap of money. I never saw that much money and I know the plaintiff never did, and I don't suppose any member of the jury ever did; but this defendant did. It's got plenty of it, and we want it. This is lots of money to us, but a mighty little to this defendant. It could give us $20,000 and never miss it." These remarks were grossly improper, and it was the duty of the court to rebuke counsel and require him to desist, and to warn the jury to disregard them. But it does not appear from the record that the court failed to do this; and in the absence of any such showing, this court cannot assume that there was any omission in this respect. The presumption is that the court did its duty.

12. We are satisfied that a new trial ought to have been granted on the general grounds of the motion. The plaintiff's own testimony shows that he could easily have avoided the injury, and there is no explanation of why he failed to do so. It appears from the declaration that he was injured after he discovered that danger was imminent, and in his testimony he says that when he went to the platform to find the conductor, and had put one foot on it, he saw the train approaching, and that

it was coming down a sharp grade, the condition of which he knew, and at a rapid speed for coupling; that he heard the engineer blow his whistle, and a person on the ground called to him that the train was coming back and he had better look out. He hurried back, going as far as about the middle of the car, where the lady was for whom he had gone to the conductor; and as he turned to go into the seats, his right arm on one seat and his left on the back of another, the train struck the car and he was thrown on the corner or arm of the seat and injured. On cross-examination he testified: "When I went out there and saw that train backing towards our coach, I could easily have stepped off down on the ground, and avoided any trouble from the collision. There is no doubt of that. I could have done that. I could have jumped off without any trouble at all. It was only two steps to the ground. Instead of this I went back to my seat in the middle of the car. I could have taken a seat near the end. Those seats back there were nearly all vacant." Why did he not avail himself of these means of safety? He does not undertake to explain. If there was any reason that could have justified him in going on to the middle of the car in the face of the danger of a violent shock which he saw was imminent, instead of availing himself of what he admitted to be a certain and easy way of avoiding it, his testimony fails to disclose it. The explanation given by the declaration is that he went back to warn the lady of the impending danger, as well as to get a seat. Whether this explanation would be satisfactory or not it is needless to consider, for it is nowhere made in the testimony. The plaintiff says that he "went back to Mrs. Bagwell," but does not say why. It does not appear that his purpose was to warn or to protect her, or that he had any other reason in going back than to take a seat. Having shown by his own testimony that he could have avoided

the injury, it was incumbent on him to make some reasonable explanation of his failure to avoid it; and in the absence of any such explanation, we think it is clear that he was not entitled to recover. Code, §2972. But while in consequence of this state of the evidence we hold that a new trial should be granted, it does not follow that there was positive error in the refusal to grant a nonsuit. *Tison* v. *Yawn*, 15 *Ga.* 493. The judgment overruling the motion for a new trial is therefore reversed, but as to the overruling of the demurrer to the declaration and of the motion to nonsuit, judgment is affirmed. Judgment is also affirmed as to the cross-bill of exceptions.