FOSTER, by next friend, *v.* ATLANTA RAPID TRANSIT COMPANY.

The admission, over the objection of a party, of hearsay evidence, the natural tendency of which was to discredit his witnesses and prejudice his case, requires the grant of a new trial, when it is applied for upon this ground.

Argued February 20, — Decided March 4, 1904.

Action for damages. Before Judge Calhoun. City court of Atlanta. March 9, 1903.

*Rucker & Rucker,* for plaintiff.

*Rosser & Brandon* and *Walter T. Colquitt,* for defendant.

Fish, P. J.   Frank Foster, by his next friend, Henry Foster, brought suit, in the city court of Atlanta, against the Atlanta Rapid Transit Company, a street-railroad company, for damages. The petition alleged that Frank Foster, while a passenger on a car of the defendant company, and prepared to pay his fare, was, without warrant or authority of law, pushed and kicked from the same by the conductor in charge of the car, whereby he sustained certain specified injuries. The defendant company, by its answer, denied that its conductor committed any of the acts charged in the petition.. On the trial of the case there was a sharp conflict in the testimony introduced by the parties. The jury found a verdict for the defendant. The plaintiff made a motion for a new trial on the usual grounds, to which, by amendment, there was added one other.   This last ground alleged error in the following ruling of the court:   L. O. Simmons, a witness for the defendant, testified that the names of the persons who were on the car that night were turned over to him, and he went to see them.   The court then, over the objection of plaintiff's counsel, allowed him to testify as follows:   " I did not subpœna them, because they did not know anything about it.   They said they did not know anything about the transaction, and so I did not need them." The objection made to the admission of this testimony was, that it " was incompetent, irrelevant, immaterial, and hearsay."   The motion for a new trial alleged that this testimony was hurtful to the plaintiff, because two witnesses for the plaintiff had sworn that the conductor came into the car after he had kicked the plaintiff, Frank Foster, off, and said:   " I am going to kill a lot of them little sons of bitches;" and " further stated he was going to kill a lot of them damned little niggers, and laughed about it." In a note to this ground, the trial judge states:   " The court stated to the jury that he let this evidence in to account for the non-production of the witnesses, and not for the purpose of proving facts."   The record shows that one of the witnesses who swore that the conductor made the statements, mentioned above, testified that others on the car heard these statements.   According-ing to the testimony of the conductor, there were many people on the car at the time it was alleged he kicked and pushed the

plaintiff off, especially at and near the end of the car where this was said to have occurred; and the circumstances testified to by the plaintiff and his witnesses were of such a character that, if they really occurred, other passengers on the car would very likely have had knowledge of them. Therefore, for the court — no matter what may have been his purpose in admitting this testimony — to allow Simmons, an agent of the defendant company, charged with investigating the case and looking for witnesses, to testify that he had received a list of the names of the persons who were on the car when it was alleged this occurrence took place and had seen these people, and they had told him they knew nothing about it, was to admit hearsay testimony the natural tendency of which was to discredit the testimony of the plaintiff's witnesses and to injure his case. To allow a witness, presumably of good standing and character, to testify that he had seen the persons who were on the car at the time the plaintiff was alleged to have received his injuries, and they had stated to him that they knew nothing of such an occurrence as the one in question, was, in a measure, equivalent to these persons themselves so stating to the jury. It was to allow statements not made under oath, unsifted by cross-examination, possibly made by the parties to avoid being subpœnaed as witnesses, and prejudicial to the plaintiff, to be submitted to the jury.

Who can say what force and effect such hearsay statements may have had upon the minds of jurors considering a case in which the testimony of the witnesses who really appeared before them was, upon the vital issue in the case, so painfully conflicting? That the evidence was open to the objection that it was hearsay there can be doubt. Its admission absolutely required the grant of a new trial. That the court told the jury that it was admitted only for the purpose of accounting for the non-production of witnesses does not effect the question of its admissibility. It would open a very wide door for the introduction of hearsay testimony to hold that testimony of this character was admissible for such a purpose. All that a party would have to do to get before the jury unsworn statements of persons shown to have been present when a given transaction was alleged to have occurred, tending to show that it did not occur, would be to introduce a witness who would swear that he had seen such persons and they had

told him that they knew nothing about such an occurrence. Neither the plaintiff nor the defendant was under any legal obligation to introduce as witnesses all the persons who were on the car at the time of the alleged occurrence, and so neither was required to account for the non-production of such persons as witnesses. Besides, if either had been under any obligation to account for the non-production of such persons, this was not the way in which to do it. If production were required, non-production could not be excused upon such a ground; and hearsay evidence would be none the less inadmissible. The way to account for the non-production of a witness is to show inability to produce him. To sustain the ruling of the court the defendant in error cites *Richmond & Danville R. Co.* v. *Garner*, 91 *Ga.* 27. In reference to this citation, it is sufficient to say that there the absent witness was the plaintiff's wife, and he accounted for her non-production by simply showing that she was detained at home by reason of the sickness of her children. The question of the admissibility of hearsay evidence was not involved.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*