BEASLEY, Superintendent of Banks, *v.* BURT *et al.*

No. 15498.   JULY 3, 1946.   REHEARING DENIED JULY 16, 1946.

*Eugene Cook,* Attorney-General, *R. A. McGraw,* Assistant Attorney-General,. and *Memory & Memory,* for plaintiff in error.

*Lee S. Purdom* and *E. O. Blalock,* contra.

CANDLER, Justice. (After stating the foregoing facts.) ■ We deal first with the qualification of the trial judge. It is insisted that, while Blackshear Bank was not a party to the proceedings, it had such a pecuniary interest in the outcome of the case that the trial judge should have disqualified himself on a motion made for that purpose. If disqualified, it was because of his relationship, within the prohibited degree, to one who had an interest in stock of Blackshear Bank. It was not disputed that the wife of the judge owned, at the time of trial, an interest in stock of Blackshear Bank. "No judge . . shall sit in any cause or proceeding in which he is pecuniarily interested, nor preside, act, or serve, in any case or matter, when such judge is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil law." Code, § 24-102. Not being a party to the case, we must discover from the record how the existing bank may be affected by the establishment of the proposed bank. It is earnestly insisted by the plaintiff in error that the nature of the charges made against Blackshear Bank were so serious that it was necessary for that bank to defend itself. Yet, so far as the record here shows, Blackshear Bank took no active part in the case save only to have a few of its patrons write a letter to the Superintendent of Banks during the course of his investigation, suggesting that establishment of the proposed bank would not be advisable. However, we have not overlooked the fact that counsel for Blackshear Bank appeared with the Department of Law as counsel of record for the Superintendent of Banks; and we think that counsel for the plaintiff in error clearly express in their brief the real opposition to the establishment of the proposed new bank, as follows: "The evidence introduced on defendant's motion and which was uncontradicted showed that there was only one bank in the City of Blackshear, and if a new bank was established, the business of the Blackshear Bank would necessarily be affected by reason of withdrawal of deposits from the Blackshear Bank and transfer of same to the new bank, and by reason of loss of interest on loans which would be made by the new bank rather than the existing bank, and by loss of exchange on checks. We do not see how under these facts it can be said that the loss which the present bank would incur by reason of the establishment of the new bank would not be pecuniary."

We think that the record clearly discloses that the only possible interest which Blackshear Bank had in the case was the loss of business which it might suffer through legitimate competition should the proposed new bank be established. Would such an interest in the outcome of the litigation work a disqualification of the trial judge because of his relationship to one who had an interest in stock of the affected bank? We think not. "To work a disqualification, the interest must be a direct, certain, and immediate interest, and not one which is indirect, incidental, or remote. A judge is not disqualified because he is interested in the question to be decided, where he has no direct and immediate interest in the judgment to be pronounced." 30 Am. Jur. 773, § 57. "The interest must be a direct, real, and certain interest in the subject-matter of the litigation; not merely indirect, or incidental, or remote, or contingent, or possible. It is not sufficient . . that he owns land on a stream next below plaintiff who is suing to enjoin the pollution of the stream." 33 C. J. 994, § 137. To work a disqualification of the judge, "the liability or pecuniary gain or relief to the judge must occur upon the event of the suit, not result remotely in the future from the general operation of laws and government upon the status fixed by the decision." Piuser v. Sioux City, 220 Iowa, 308 (262 N. W. 551, 100 A. L. R. 1298). The interest of Blackshear Bank in the instant case, under the strongest view which we take of the record, is that probably, at some time in the future, some of its depositors may transfer their accounts to the proposed new bank, it may lose loans which it might desire to make, its income from exchange charges may be reduced, and other desired banking business may be done with the new bank. Such interest, however, is not immediate, is not in the judgment to be pronounced, is purely speculative, indirect, incidental, contingent, and remote, and would result only from the general operation of legitimate competition. Blackshear Bank is not affected in a legal sense, either favorably or unfavorably, by the issues made in the instant case. See in this connection *City of Valdosta* v. *Singleton,* 197 *Ga.* 194 (28 S. E. 2d, 759). Accordingly, there is no merit in the contention as to disqualification.

It is insisted that the pleadings presented issues of fact which should have been submitted to a jury for determination. The plaintiff in error, as defendant in the lower court, prior to the

introduction of any evidence, made a written demand for a jury trial, stating that there were issues of fact involved. To determine this question, we must examine and construe the Banking Act of 1919 (Ga. L. 1919, pp. 135, 187). The Code, § 13-1701, which is taken from that act, provides: "In the event the Superintendent of Banks should refuse to issue any permit authorizing the incorporation of any bank . . the person or persons affected by such failure or refusal . . may institute appropriate proceedings in the nature of a mandamus against the Superintendent in the superior court of the county in which such bank is sought to be incorporated." Section 13-1702, also a part of the Banking Act, declares: "On the trial of any such cause the superintendent shall have the right to introduce evidence to sustain or tending to sustain his action or refusal to act in the premises, and if from the evidence in the case the court is of the opinion that such permit, or authority, or certificate has been wrongfully or improperly refused or withheld by the superintendent, and that the facts and circumstances authorize and require the granting of such permit, authority, or certificate . . the court shall render an order, judgment or decree directing the Superintendent of Banks to issue such permit, authority, or certificate."

It will be seen that the remedy provided for the aggrieved applicants for charter in the above two Code sections is an original suit in the superior court in the nature of a mandamus. It is not an action to compel the superintendent to act, because he has already acted; nor an appeal, because there is no judgment of a tribunal from which an appeal can be taken. It is a special proceeding, the subject-matter of which is the refusal of the certificate of charter in the circumstances of the particular case, as they actually exist, whether or not they were considered by the Superintendent of Banks. *DuBose* v. *Gormley,* 189 *Ga.* 321, 327 (5 S. E. 2d, 909).

Article 6, section 18, paragraph 1, of the Constitution of this State (Code, § 2-4501) declares that "the right of trial by jury, except where it is otherwise provided in this Constitution, shall remain inviolate." This provision has been uniformly construed as not conferring a right to trial by jury in all classes of cases, but merely as guaranteeing the continuance of the right unchanged as it existed either at common law or by statute at the time of the adoption of the Constitution. 24 Cyc. 101; *Crowell* v. *Akin,* 152

*Ga.* 126, 135 (108 S. E. 791, 19 A. L. R. 51). Prior to the Constitution, certain classes of cases were triable without a jury, and all cases triable without a jury prior thereto may still be so tried. It will be conceded that it is competent for the legislature to provide for a trial without a jury in cases similar to those in which such a trial was in use prior to the adoption of the Constitution. *Tift* v. *Griffin,* 5 *Ga.* 185. In a number of cases in this State it has been held that in civil actions the right of jury trial exists only in those cases where the right existed prior to the first constitution, and that the guaranty does not apply to special proceedings not then known or subsequently created or provided by statute. For examples: proceedings in the court of ordinary, *Davis* v. *Harper,* 54 *Ga.* 180; contested-election cases, *Freeman* v. *State,* 72 *Ga.* 812; proceedings against road defaulters, *Haney* v. *Commissioners,* 91 *Ga.* 770 (18 S. E. 28), and *Blankenship* v. *State,* 40 *Ga.* 680; partition proceedings, *Rodgers* v. *Price,* 105 *Ga.* 67 (31 S. E. 126); condemnation proceedings, *Savannah &c. Ry. Co.* v. *Postal Telegraph Co.,* 112 *Ga.* 941 (38 S. E. 353); proceedings to validate bonds, *Lippitt* v. *Albany,* 131 *Ga.* 629 (63 S. E. 33); Workmen's Compensation Act, *Metropolitan Casualty Ins. Co.* v. *Huhn,* 165 *Ga.* 667 (142 S. E. 121, 59 A. L. R. 719); Land Registration Act, *Crowell* v. *Akin,* supra; and Child Adoption Act, *Jernigan* v. *Garrett,* 155 *Ga.* 390 (117 S. E. 327). It is not insisted that the legislature was without authority, in the enactment of the proceeding provided for under the Banking Act, to restrict the right of trial by jury; but it is earnestly insisted that, since the act provided, "which proceedings shall be tried as in other cases of mandamus," express provision was actually made for trial by jury where an issue of fact was involved. It should be borne in mind that the remedy here provided is not mandamus, which is a common-law writ, but a special proceeding in the nature of mandamus. The special act here involved does not specifically and expressly provide that proceedings had under it shall in all respects be tried as the common-law writ of mandamus is tried, but does expressly state, "if from the evidence in the case the court is of the opinion that such permit, or authority, or certificate has been wrongfully or improperly refused or withheld by the superintendent . . the court shall render an order, judgment, or decree, directing the Superintendent of Banks to issue such permit, authority, or certificate." We think that the

words, "If the court is of the opinion," and "the court shall render an order, judgment or decree," have reference to the presiding judge sitting as the court, without a jury.

We think that this position is sustained by the holding of this court in *Jernigan* v. *Garrett*, supra, which dealt with the adoption of a minor child, and in which the court said: "If the father or mother has abandoned the child, and the court is further satisfied that such adoption would be to the interest of the child, the court shall declare the child to be the adopted child of the petitioner and capable of inheriting his estate. . . The statute referred to contemplates that the court, after hearing objections, if any such are filed to the application, shall determine the questions made. Trial by jury is not contemplated by this statute. The only hearing provided for is by the court to whom the application is made, and the constitutionality of the law is not attacked on the ground that it is in violation of the constitutional guaranty of the right to a trial by a jury, and if such attack had been made on the statute, it would have been without merit."

Again in *DuBose* v. *Gormley*, supra, when this court was called upon to decide whether or not the allegations in a petition brought under the Banking Act of 1919 were sufficient to state a cause of action, it was said: "If on the trial of that suit the court, after hearing evidence, is of the opinion that the facts and circumstances authorize and require the granting of a certificate, the *court* renders judgment directing the superintendent to issue the permit. . . . It is the court's opinion based on the facts and circumstances as made to appear by the evidence submitted at the trial that determines whether a certificate shall issue." While it is true that the *DuBose* case was before the court on demurrer, still the case involved a discussion of the trial procedure, and it will be noted that in that case, when this court stated, "The *court* renders judgment," it italicized the word "court." Construing the two Code sections together (§§ 13-1701, 13-1702), which we must do to ascertain the legislative intent, we are of the opinion that the issues made in the instant case were for determination by the trial judge under the general rules relating to mandamus procedure; and accordingly, it was not error to overrule the motion for trial by jury, nor for the court, after having overruled such motion, to hear the evidence offered in support of the petition.

■ In grounds 7 to 18, inclusive, error is assigned on orders overruling separate motions to exclude the evidence given by a number of witnesses for the plaintiffs, who testified that they were of the opinion that the establishment of the proposed bank would be expedient and desirable; that one bank is not sufficient to supply the banking needs of Blackshear and its trade area; that two banks at Blackshear could profitably operate in normal times; and that ownership by the members of one family of a majority of the stock in Blackshear Bank and its affiliated corporations tends to create a monopoly and to stifle business. As such evidence was given by each separate witness, it was objected to on the ground that it was a mere conclusion of the witness; related to an ultimate issue of fact, which the court was required to pass on from the facts, and not what the witness thought about it; and being only the opinion of the witness, it had no probative value. The assignments of error recite that the witnesses were allowed by the court to give the evidence objected to, "after testifying as shown by the brief of evidence." An examination of the record discloses that each witness who was allowed to testify to any opinion he had with reference to the issues of the case had previously testified at great length to existing banking facilities in the community to be served by the proposed bank, and to business and financial conditions generally in Blackshear and the surrounding territory.

"Where the question under examination and to be decided by the jury shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." Code, § 38-1708. "A witness may give his belief or opinion when it is in connection with, and a mental deduction from, the facts which come within his knowledge and to which he has deposed." *Bryan* v. *Walton,* 20 *Ga.* 480 (3). The rule as to opinion evidence is stated as follows in *Macon & Western R. Co.* v. *Johnson,* 38 *Ga.* 410 (5) : "Though opinions are not generally evidence, yet, when the truth sought to be ascertained is matter of opinion, a witness, not an expert, may give his opinion, if he states the facts upon which it is based." In this connection, see also *Goodwyn* v. *Goodwyn,* 20 *Ga.* 600 ; *City Elec. Ry. Co.* v. *Smith,* 121 *Ga.* 663 (49 S. E. 724) ; *Lankford* v. *Milhollin,* 200 *Ga.* 512 (37 S. E. 2d, 197). Whether or not the establishment of a bank in any

named locality will be of public convenience and advantage, necessarily is a matter of opinion and not of fact. It can never be determined to a mathematical certainty that any proposed new bank is expedient and desirable, or whether public convenience and advantage will be promoted by its establishment. In the first effort to determine this question under the statute, the Superintendent of Banks is authorized to employ "the best source of information at his command," and then finally on determination of the question by the court, we think that the considered opinion of one who professes to have knowledge of conditions in the community where the proposed bank is to be established would be admissible and material evidence to be considered by the court along with all the other facts and circumstances of the case. This court and the Court of Appeals have held it permissible for a witness, after stating the facts on which it is based, to give his opinion on: the insolvency of a bank, *Massachusetts Bonding & Ins. Co.* v. *Floyd County,* 178 *Ga.* 595 (173 S. E. 702) ; personal solvency or insolvency, *Kirkman* v. *Ashford,* 145 *Ga.* 452 (89 S. E. 411) ; the insanity of a person, *Espy* v. *Preston,* 199 *Ga.* 608 (34 S. E. 2d, 705) ; value of real property, *Central Georgia Power Co.* v. *Stone,* 139 *Ga.* 416 (77 S. E. 565) ; the value of personal property, *Central Railroad* v. *Wolff,* 74 *Ga.* 664; the value of personal services, *Eagle & Phoenix Manufacturing Co.* v. *Browne,* 58 *Ga.* 240; extent or degree of disability resulting from injury, *Chattanooga &c. R. Co.* v. *Huggins,* 89 *Ga.* 494 (15 S. E. 848) ; reasonable time for the performance of a duty, *Allison* v. *Wall,* 121 *Ga.* 822 (49 S. E. 831) ; the speed of a train, *Western & Atlantic R.* v. *Thompson,* 38 *Ga. App.* 599 (144 S. E. 831) ; the age of a child, *Dixie Manufacturing Co.* v. *Ricks,* 28 *Ga. App.* 160 (110 S. E. 454) ; and the handwriting of a named person, *Foster* v. *Jenkins,* 30 *Ga.* 476. Since so many different elements could and do enter into the advisability of establishing a bank, and especially one in a community where banking facilities exist, and demonstrating whether or not it will be of public convenience and advantage, the question necessarily is one of opinion rather than fact, and we have no hesitancy in holding that the opinion of those living in the locality to be affected and professing to have knowledge of existing conditions, after stating the facts upon which such knowledge is based, is admissible and of probative value. Therefore no error was committed in overruling the motions to exclude such evidence.

■ Error is assigned in grounds 20, 21, 22, and 23 on the admission of testimony given by Alvin Ratliff, a witness for the plaintiffs, who was permitted to testify to the relationship of the stockholders of Blackshear Bank, The Blackshear Manufacturing Company, Pierce Trading Company, and The Brantley Company, with the four deceased Brantley brothers, over the objection that such evidence was irrelevant, immaterial, did not illustrate any issue involved in the case, and had no probative value. It was alleged by the plaintiffs (defendants in error) that the "Brantley interests," composed of descendants and relatives of four deceased Brantley brothers, owned a majority of the stock in the above-named corporations and other similar businesses located in Blackshear and Pierce County; and that such ownership naturally tended to create a monopoly and to stifle business. The petition was not demurred to. The objections were without merit. The plaintiffs were entitled to prove their case as alleged. "It can not be at this time even a matter of slight doubt that a plaintiff is entitled to prove everything he alleges in a petition upon which he is permitted to go to trial without objection on the part of the defendant, either to its form or its substance." *Mayor &c. of Macon* v. *Melton,* 115 *Ga.* 153, 156 (3) (41 S. E. 499). See also *Atlantic Coast Line R. Co.* v. *Anderson,* 35 *Ga. App.* 292, 294 (133 S. E. 63); *Tifton &c. Ry. Co.* v. *Butler,* 4 *Ga. App.* 191 (4d) (60 S. E. 1087); *Fleming* v. *Roberts,* 114 *Ga.* 634 (3) (40 S. E. 792). It was not erroneous to allow the testimony over the objection made.

■ Over the objection that the evidence was hearsay, immaterial, irrelevant, and of no probative value, Alvin Ratliff, a witness for the plaintiffs, was permitted to testify as follows:

"Q. Mr. Ratliff, in connection with the establishment of a new bank at Blackshear, have you interviewed a large number of people in Blackshear? A. Yes, sir, I have contacted a good many. Q. About how many have you interviewed, Mr. Ratliff, approximately? A. Well, I wouldn't know exactly, but I think I have talked to as much as two hundred people. Q. Out of the number you have talked to, have you found any who did not favor the new bank other than those connected with the Brantley interests? A. I didn't find a man."

Unquestionably the purpose of this testimony was to show that many of the people residing in the community to be served by the

proposed new bank were of the opinion that its establishment would be of public convenience and advantage. The fact that it was offered and admitted over the objection made, convinces us that the court considered it of probative value. "Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons." Code, § 38-301. The evidence objected to, being hearsay, should not have been admitted over the objection urged. In *Foster v. Atlanta Rapid Transit Co.*, 119 *Ga.* 675, 677 (46 S. E. 840), over the objection that the evidence "was incompetent, irrelevant, immaterial, and hearsay," this court said: "to allow . . , an agent of the defendant company, charged with investigating the case and looking for witnesses, to testify that he had received a list of the names of the persons who were on the car when it was alleged this occurrence took place and had seen these people, and they had told him they knew nothing about it, was to admit hearsay testimony, the natural tendency of which was to discredit the testimony of the plaintiff's witnesses and to injure his case. To allow a witness, presumably of good standing and character, to testify that he had seen the persons who were on the car at the time the plaintiff was alleged to have received his injuries, and they had stated to him that they knew nothing of such an occurrence as the one in question, was, in a measure, equivalent to these persons themselves so stating to the jury. It was to allow statements not made under oath, unsifted by cross-examination, possibly made by the parties to avoid being subpœnaed as witnesses, and prejudicial to the plaintiff, to be submitted to the jury."

In the case at bar, there can be no doubt that to allow the witness Ratliff to testify that he had interviewed a large number of the citizens of Blackshear, probably two hundred, and that all favored the establishment of the proposed new bank, except those connected with the Brantley interests, was open to the objection that it was hearsay. The presumption is, we think, that they would not favor the establishment of the proposed new bank unless they were of the opinion that it would be of public convenience and advantage. The evidence, being hearsay, was inadmissible, and its admission over the objection made was reversible error.

■ The 25th assignment of error is not well taken. The evidence to which it refers, and which was allowed over the defend-

ant's objection, was directly responsive to a question propounded by his counsel. It may be added, too, that the question was in line with others immediately preceding it. *Tift* v. *Jones, 77 Ga.* 181 (3 S. E. 399).

■ The 26th and 27th assignments of error have been carefully examined and are without merit.

■ J. C. Beasley, Superintendent of Banks, called by plaintiffs for the purpose of cross examination, in response to questions, testified that certificates for charter of various banks had been recently granted by him, some in localities where banks were then located, and giving the approximate population of the respective locality and its banking facilities. The court overruled a motion to exclude the evidence on the ground that "it was irrelevant to any issue involved in the present case and could not concern the determination of said case. Counsel for defendant submitted that the question for determination in the instant case was what was proper to be done here and not whether the defendant did or did not grant charters in other towns." The exception is without merit since the evidence objected to was relevant on cross-examination. Code, § 38-1705.

■ Assignments 29 and 30 have been fully dealt with in the preceding divisions of this opinion and require no further elaboration.

*Judgment reversed. All the Justices concur, except Wyatt, J., who dissents from the ruling in division 5 of the opinion and the judgment.*