### 38577. STEPHENS v. STEPHENS.

HILL, Presiding Justice.

Does Canon 3C of the Code of Judicial Conduct, published at 231 Ga. appendix A-5 (1973) (also at Code Ann. Title 24, Appendix A), disqualify a judge from presiding in cases in which the employer of his attorney-son represents one of the parties? The court below found no disqualification and we granted the resulting application for interlocutory appeal.

Dr. Lester D. Stephens, a professor at the University of Georgia, and H. Faye Stephens were divorced in June 1976. In May 1981, Faye Stephens brought a petition to modify the divorce decree by seeking additional alimony. Dr. Stephens defended and counter-claimed for modification under the live-in-lover statute.

Shortly thereafter, Dr. Stephens saw an attorney who had been a student of his while an undergraduate at the University of Georgia. In conversation, the former student informed Dr. Stephens that he was soon going to be working as an associate for a sole practitioner in Athens, Gene Mac Winburn. Mr. Winburn represents the wife, Faye Stephens, and the case was then pending before the new associate's father, a judge. Dr. Stephens informed his attorney of this conversation and a motion for the recusal of the judge was made. Another judge was assigned to hear the motion by order of the Administrative Judge of the Tenth Judicial District. See *State v. Fleming,* 245 Ga. 700 (267 SE2d 207) (1980); *Ferry v. State,* 245 Ga. 698 (267 SE2d 1) (1980).

It is clear from the documents, evidence presented at the hearing, the court's order and the briefs filed in this court, that there is no allegation or evidence of any impropriety or showing of partiality on the part of the judge.

The judge hearing the motion to recuse held that there was no pecuniary disqualification under Code Ann. § 24-102, and, absent

---

any *factual* showing that the judge's impartiality might reasonably be questioned, that the father-son relationship alone did not disqualify the judge.

1. Code Ann. § 24-102 provides: "No judge . . . shall sit in any cause or proceeding in which he is pecuniarily interested, nor preside, act, or serve, in any case or matter, when such judge is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil law. . . ." The judge here has no pecuniary interest in the case. Likewise, his son, who is paid on a salaried basis by the attorney representing one of the parties, will reap no monetary benefit from the results. *Adams v. Adams,* 150 Ga. 346 (1) (103 SE 812) (1920). The mere fact that the attorney might give a bonus to the judge's son at the end of the year is too remote and speculative to work a disqualification of the judge under this Code section. See *Beasley v. Burt,* 201 Ga. 144 (1) (39 SE2d 51) (1946). The court below did not err in refusing to disqualify the judge under Code Ann. § 24-102.

2. The Code of Judicial Conduct, adopted by this court in 1973 and made effective January 1, 1974, (see *Dungee v. State,* 237 Ga. 218 (4) (227 SE2d 746)), provides a broader rule of disqualification than does Code Ann. § 24-102. Canon 3C(1) states: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. . . ." This Canon is followed by a non-exclusive list of instances where disqualification is mandatory: ". . . including but not limited to instances where: . . . (d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: . . . (ii) is acting as a lawyer in the proceeding; [or] (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; . . ." Applying paragraph (d) of Canon 3C(1) to the facts of this case, a judge should disqualify himself in a proceeding in which a person within the third degree of relationship to himself or his spouse (ii) is acting as a lawyer in the proceeding, or (iii) is known by the judge to have an interest that could be substantially affected by the outcome to the proceeding. It is clear that the judge is not disqualified under paragraph (d). His son is not "acting as a lawyer in the proceeding" as prohibited under subsection (ii), see *In re Broome,* 245 Ga. 227, 228 (264 SE2d 656) (1980), nor is there any evidence or contention that the son has any interest which "could be substantially affected by the outcome" of the case under subsection (iii). See Division 1, supra.

The commentary under paragraph (d) confirms the inapplicability of subparagraph (ii) and refocuses our attention on the text of Canon 3C(1) itself: "The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is

affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that 'his impartiality might reasonably be questioned' under Canon 3C(1) . . . may require his disqualification." We note that this comment was written in conjunction with lawyer-relatives of the judge within the third degree and we deal here with a first degree relative. See Commentary to Canon 3C(3)(a).

The court below, in applying this Canon and commentary to the question of the judge's disqualification, held that there were no factual contentions leading to the conclusion that the judge's "impartiality might reasonably be questioned" and relied on our recent case of *Blumenfeld v. Borenstein,* 247 Ga. 406 (276 SE2d 607) (1981), in concluding that status alone, here the father-son relationship, without more, did not cause a per se disqualification.

In *Blumenfeld v. Borenstein,* supra, 247 Ga. at 408, 409, we held that other members of an attorney's law firm were not per se disqualified from representation of a party where the attorney's spouse was or had been associated with the firm representing the opposing party. There, we held that the mere status of a member of the law firm being married to the opposing party's counsel's former associate, without a showing of actual wrongdoing, a conflict of interests, or jeopardy to a client's confidences, cannot overcome the right to be represented by the attorney of one's choice, "because absent danger to the client, the nebulous interest of the public at large in the propriety of the Bar is not weighty enough to justify disqualification." Id. at 410. That is, where there is, on the one hand, no actual harm to the opposing party and only a peripheral public interest in the "appearance of impropriety," and on the other hand, the right to the attorney of one's choice, the balance was tipped in favor of the client's right of representation and the attorney's law firm was not disqualified. Thus, in *Blumenfeld,* as the court below recognized, the question of disqualification was one of fact.

However, the question now before us involves the disqualification of the trial judge and not that of an attorney or law firm. The client's right to have the attorney of her choice represent her is not implicated here. There is no corresponding right to the judge of one's choice to weigh in the balance in determining whether or not a judge is disqualified. And, perhaps most importantly, the public has a greater interest where a judge is involved for, indeed, the public's faith and trust in the judicial system itself is more heavily impacted. All parties before the court have the right to an impartial judicial officer. Therefore, the questions are entirely different where an attorney's disqualification based upon "appearance of impropriety" is concerned, and where a judge's disqualification based upon the fact that his "impartiality might reasonably be

questioned" is concerned.

In determining the question of whether the judge's "impartiality might reasonably be questioned" here we decide it based upon the father-son relationship alone because there is no evidence or intimation of any wrongdoing or impropriety on the part of the judge, his lawyer-son, or his son's employer, and it is clear that no direct monetary or other advantage would accrue to the son as a result of a ruling favorable to the son's employer's client.

The Judicial Qualifications Commission considered this question in its Opinion No. 20: "The Commission has been asked to express an opinion as to whether a judge is disqualified to handle a case in which one of the lawyers is a member of a firm that includes the judge's son. The judge has already decided that he will disqualify himself (a) in any case in which his son personally participates, or (b) in any case handled by the law firm on a contingent fee basis; and his inquiry relates only to noncontingent fee cases in which his son will not participate." The Commission then set out the Canon and commentary quoted above and concluded: "There is no automatic disqualification under this Canon in the situation covered by the inquiry. However, the Commission believes that under the particular circumstances outlined in the judge's request, his 'impartiality might reasonably be questioned,' within the meaning of subsection 3C(1). Accordingly, it is the Commission's opinion that the judge should not preside in any case in which any partner or associate of the law firm that includes his son actively participates." We agree that where the attorney appearing before the judge is the employer of the judge's attorney-son, the judge's "impartiality might reasonably be questioned" even though his impartiality is not called into question by any other facts.

We recognize that, under this decision, the son's practice of law in his hometown may be affected. We find this latter consideration is muted, however, by the clear direction of the Canon itself which would forbid the related attorney from appearing as a lawyer in his father's court, and would also forbid the appearance of other members of his law firm if, because he is a partner or otherwise, the related attorney had an "interest that could be substantially affected by the outcome of the case." Canon 3C(1)(d)(iii), supra. Therefore to distinguish this case from the Canon on the basis that the son is an employee rather than a partner of Gene Mac Winburn does not properly focus on the disqualification established by the purpose and intent of the Canon. The harm caused to the public's confidence in the judicial system by questions as to the impartiality of the judiciary is not eliminated by the fact that the attorney-son is an associate rather than a partner.

We therefore conclude that the judge hearing the motion to recuse erred in failing to find the judge to be disqualified.

*Judgment reversed. All the Justices concur, except Clarke and Smith JJ., who dissent.*

DECIDED JUNE 29, 1981 —
REHEARING DENIED JULY 21, 1982.

*J. Vincent Cook, David E. Ralston,* for appellant.
*Gene Mac Winburn,* for appellee.

CLARKE, Justice, dissenting.

I regret that the majority in its opinion has taken us one step further from the precept pronounced by this court in its very first opinion: "It is presumed, until the contrary is proved, that every man obeys the mandates of the law, and performs all his *official* and social duties." *Doe v. Roe,* 1 Ga. 3 (1846).

Per se disqualifications are not only harsh, they most often lead to impractical results. In my opinion our holding in *Blumenfeld v. Borenstein,* supra, authorizes a holding of no disqualification. I would have accepted such authority and so held.