*In re* MARRIAGE OF WANDA CLICK, Petitioner-Appellant, and ROBERT CLICK, Respondent-Appellee.

Second District   No. 2—87—0782

Opinion filed April 28, 1988.

Robert A. Chapski, of Law Office of Robert A. Chapski, Ltd., of Elgin (Randy K. Johnson, of counsel), for appellant.

Schaffner & Associates, Chartered, of West Dundee (Harry Schaffner, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Petitioner, Wanda Click, appeals from the property distribution portion of an order entered by the circuit court of Kane County dissolving her marriage to Robert Click. While petitioner's action was pending, Robert was critically injured in a motorcycle accident. He has been in a coma since May 4, 1986. The trial court consolidated the dissolution action with an action brought by Robert's mother, Jacquelyn Click, to have Robert adjudicated a disabled adult and to have a guardian appointed for him. Jacquelyn was subsequently appointed guardian of Robert's person and estate, and she participated in the property division portion of the dissolution proceeding on his behalf.

Wanda initially sought to enforce a settlement agreement which she alleged the parties had reached before Robert's accident. The court rejected that claim, however, concluding that Wanda had not sufficiently established the terms of the alleged agreement to allow it to be enforced. On March 19, 1987, the court entered an order dissolving the marriage and dividing the marital property. The court noted that, according to Wanda, Robert was a professional thief who had only occasionally been "gainfully employed" during the marriage. Wanda worked only part-time during the marriage. The court found the testimony regarding the parties' earnings to be incredible as the evidence demonstrated that they had acquired assets far in excess of their reported income. The property division portion of the order directed the sale of the marital residence, in which Wanda was residing, and an equal distribution of the proceeds between the parties. It awarded Robert the proceeds of a worker's compensation claim involving an employment-related injury he had received, the proceeds of

a pending action concerning his motorcycle accident, the salvage value of the Gold Wing motorcycle on which he was injured, a motorcycle trailer, and a number of personal items. It awarded Wanda a 1983 automobile, a smaller motorcycle, an aluminum boat, and some personal items. Wanda was additionally required to reimburse Robert for some of his furnishings which she sold after his accident, and for some charges she made to his credit cards. The court also ordered the equal division of any property contained in a safe deposit box and an equal division of the sale proceeds of a speed boat "if it is ever located," which Wanda claimed Robert had bought. The court directed the guardian to sell all of the assets assigned to Robert and to use the proceeds for his care. The court reserved the issue of future maintenance for Robert.

On appeal, Wanda alleges that: (1) the court's conclusion that the parties had not reached a settlement agreement was against the manifest weight of the evidence; (2) the evidence demonstrated that Robert had dissipated a marital asset by destroying the Gold Wing motorcycle; (3) the property division is inequitable and amounts to a distribution of marital property to a third party; and (4) the court erred in excluding evidence of her premarital contribution to the estate. Wanda additionally alleges that: (5) the trial judge acted improperly in not recusing himself from the case because he and Robert's attorney are both members of an exclusive legal organization; and (6) that the trial judge adopted the role of an advocate on Robert's behalf.

We first address petitioner's claim that she was prejudiced by the trial judge's mutual membership with Robert's attorney in the American Academy of Matrimonial Lawyers (the Academy), a legal organization which petitioner characterizes as exclusive. We note that Wanda's counsel raised this same contention in two other dissolution cases in Kane County over which the trial judge, Judge Melvin Dunn, presided and in which Robert's attorney, Harry Schaffner, represented the opposing party. On June 18, 1987, Judge Dunn and Mr. Schaffner both testified at a hearing on the issue in a case entitled In re Marriage of Martin (No. 85—D—1046) before Judge Joseph McCarthy. Judge McCarthy concluded that the mutual membership of Judge Dunn and Mr. Schaffner in the Academy could not serve as the basis for a change of venue in the Martin case. Subsequently, in the instant case, Judge Dunn denied Wanda's motion for a mistrial, based upon Judge McCarthy's ruling. A transcript of the Martin hearing has been included with the record on appeal.

We find virtually no support in the Martin record or in the author-

ities cited by petitioner for the contention that Judge Dunn was required to either disclose his membership in the Academy or recuse himself from this case. Moreover, petitioner cites no authority in support of her position that suspected bias or prejudice on the part of a trial judge can serve as the basis for a new trial. We note, in fact, that only a demonstration of *actual prejudice* is sufficient to warrant a change of venue from a trial judge in a pending action after he or she has made a substantive ruling. (See, *e.g., In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 532; *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 569; *Perimeter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 515.) Wanda raised her objections to Judge Dunn for the first time in this case after judgment. We believe it would be patently unreasonable to afford petitioner relief on a lesser demonstration of prejudice after trial than that which she would have been required to demonstrate during trial. The testimony offered during the Martin hearing demonstrated only that Mr. Schaffner and Judge Dunn were acquainted—a fact which falls far short of demonstrating actual prejudice. (See *Malawy v. Richards Manufacturing Co.*, 150 Ill. App. 3d at 568-69 (finding no demonstration of actual prejudice where the evidence established that a partner of plaintiff's attorney had been the treasurer of the trial judge's election campaign fund).) The trial court therefore properly denied petitioner's motion for a mistrial.

We also reject petitioner's contention that the trial judge, in effect, abandoned his neutral role and became an advocate for Robert's guardian. We agree that the trial court frequently displayed impatience with Wanda Click and her attorney and was occasionally abrupt in sustaining objections offered by the guardian's counsel. The court also excluded petitioner's attorney from a hearing regarding the guardian's fees. We cannot agree, however, that the court's comments and rulings indicated bias or prejudice against petitioner. The guardian was awarded fees only from Robert's share of the marital property. In addition, a trial judge is allowed greater latitude to comment during a bench trial than might be acceptable during a jury trial. (See *Joray Mason Contractors, Inc. v. Four J's Construction Corp.* (1978), 61 Ill. App. 3d 410, 412; see also *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 1121.) After reviewing the testimony, we cannot conclude on the basis of the court's comments or conduct that petitioner was deprived of a fair and impartial trial.

Wanda next assigns error to the trial court's ruling that there was insufficient evidence to establish that the parties had reached an agreement prior to Robert's injury. The guardian contends

that Wanda has not preserved this issue because she failed to expressly raise it in her notice of appeal. Supreme Court Rule 303(c)(2) requires that the notice of appeal "shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (107 Ill. 2d R. 303(c)(2).) However, an appeal from a final judgment draws into issue all prior, nonfinal orders which produced the final judgment. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433; *First National Bank v. St. Charles National Bank* (1987), 152 Ill. App. 3d 923, 930.) The purpose of the notice is to inform the successful party that his opponent seeks review by a higher court. (*Burtell v. First Charter Service Corp.*, 76 Ill. 2d at 433; *Dillman & Associates, Inc. v. Capitol Leasing Co.* (1982), 110 Ill. App. 3d 335, 339.) Where a deficiency in the notice is one of form rather than of substance, therefore, it does not deprive the appellate court of jurisdiction to review an unspecified order which was "a 'step in the procedural progression leading' to the judgment specified in the notice of appeal." (*Burtell v. First Charter Service Corp.*, 76 Ill. 2d at 435, quoting *Elfman Motors, Inc. v. Chrysler Corp.* (3d Cir. 1977), 567 F.2d 1252, 1254.) In the instant case, the trial court's conclusion that there was no enforceable agreement between the parties was a procedural prerequisite to its independent division of the property. Petitioner's notice of appeal was therefore sufficient to confer jurisdiction upon this court to consider the alleged agreement.

The court's conclusion that there was no enforceable agreement was not against the manifest weight of the evidence, however. The guardian's attorney, who was present when Robert and Wanda discussed a settlement, testified as an adverse witness for petitioner. He stated that the parties had reached a settlement in principle. He also stated that a written agreement was to be drawn by petitioner's attorney for Robert's approval but that no writing was ever presented to Robert or to himself. The court, therefore, could properly have concluded that Robert did not intend to be bound by the oral agreement until he had seen and approved the written contract. The fact that the parties anticipate executing a formal contract does not necessarily establish that their prior agreements were mere negotiations. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 126.) However, where the evidence establishes that they construed the execution of a formal agreement as a condition precedent to the creation of binding obligations, there is no contract until the formal document is executed. 107 Ill. 2d at 127.

Wanda argues that the parties' conduct after reaching the oral agreement demonstrates that they considered it binding. She testified

that she gave Robert's attorney a check for $1,000, which represented the amount the parties had agreed she must pay Robert for his share of a 1972 automobile, and that she received the title to the car in return. She also stated that, in apparent reliance on the agreement, Robert took possession of his Gold Wing motorcycle, which a court order had previously enjoined him from removing from the marital home. The evidence also demonstrated, however, that, after Robert's accident, Wanda: (1) took possession of Robert's van; (2) took possession and sold some of Robert's personal furnishings; (3) cashed some of Robert's worker's compensation checks; (4) wrote herself a check, to which she signed Robert's name, from Robert's personal checking account; and (5) took possession of and used Robert's credit cards. Wanda apparently did not consider the tentative agreement binding on her with respect to the above items, which the agreement had allocated exclusively to Robert. We therefore find the court's conclusion that the parties did not have a binding oral settlement agreement to be well supported by the evidence.

■■ ■ Petitioner next contends that the court erred in rejecting her claim that Robert dissipated a marital asset when he took the Gold Wing motorcycle in contravention of a court order and then destroyed it in the accident that left him comatose. Dissipation of marital assets is generally defined as " 'the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown.' " (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1019, quoting Ill. Ann. Stat., ch. 40, par. 503(d)(1), Supplement to Historical and Practice Notes, at 57 (Smith-Hurd Supp. 1984-85).) While petitioner correctly asserts that courts have occasionally found a dissipation of assets where the dissipating spouse has derived no personal benefit from his or her actions (see, *e.g., In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 719), we know of no authority, nor has petitioner cited any, which would permit a party to be held accountable for a dissipation which is not only detrimental to both parties, but purely unintentional as well. Robert violated a court order in taking the motorcycle—conduct which would ordinarily have resulted in the court's imposition of contempt sanctions against him. (See generally *In re G.B.* (1981), 88 Ill. 2d 36, 41 (regarding a court's inherent contempt power).) There was no evidence to suggest that his injury and the destruction of the motorcycle were anything other than accidental, however, and we therefore conclude that the court correctly found that he did not dissipate a marital asset.

■ We summarily reject petitioner's next contention that the

court effectively awarded marital property to third parties—Robert's health care providers. The judgment requires Robert's guardian to convert the assets awarded to Robert into cash to be used for his benefit. Robert is in an apparently irreversible coma; he resides in a nursing home and requires constant care. It is therefore true that the cash value of all of the assets assigned to Robert may eventually be paid to his health care providers in exchange for the future services they will render to him. That fact, however, in no way transforms the court's order into a direct distribution of marital assets to the nursing home.

■■ Petitioner next raises the related and equally bizarre argument that, because the Department of Public Health (Department) was providing funds for Robert's care before the court's property distribution and because a representative of the Department testified that it must cease providing financial aid to Robert if he has assets in excess of $3,200 (see Ill. Rev. Stat. 1985, ch. 23, par. 3—1.2), the court ought to have awarded Robert $3,200 and awarded the remainder of the marital assets to Wanda. She argues that the Department could then determine the extent of her obligation to reimburse it for the financial support it provided Robert during the marriage. (See Ill. Rev. Stat. 1985, ch. 23, par. 10—2.) We fail to see how the dissolution of Wanda's marriage to Robert precludes the Department from seeking that reimbursement from her in any event, however. (See *Neff v. Miller* (1986), 146 Ill. App. 3d 395.) In addition, her theory ignores the fact that the Illinois Public Aid Code (Code) (Ill. Rev. Stat. 1985, ch. 23, par. 1—1 *et seq.*) imposes no obligation upon her to support Robert after the dissolution of their marriage. Wanda's proposal would therefore leave Robert with no resources for his future care. Wanda appears to suggest that this result would be entirely appropriate since the Department would then step in to support him. It appears to us that Wanda is suggesting that the court ought to have effected a transfer of Robert's assets to her in violation of the Code (see Ill. Rev. Stat. 1985, ch. 23, par. 3—1.3) in order to qualify him for public aid. We find no error in the trial court's rejection of this unconscionable proposal.

■■ Petitioner additionally argues that the court failed to consider her needs and those of her two minor children in dividing the marital property and particularly in requiring the sale of the marital residence. The Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*) requires a trial court to divide marital property in just proportions, considering all of the relevant statutory factors. (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) While the division of assets must be equitable, it need not be equal. (*In re*

*Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37; *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 195.) The matter rests within the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of that discretion. (*In re Marriage of Smith*, 128 Ill. App. 3d at 1024; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 458; *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 935.) An abuse of discretion occurs only where the court so exceeds the bounds of reason that no reasonable person would take the view it adopted. *In re Marriage of Rapacz* (1985), 135 Ill. App. 3d 1045, 1048; *In re Marriage of Schafer* (1984), 122 Ill. App. 3d 991, 994.

■■■ The evidence established that Robert Click is totally disabled and that the prognosis for his future improvement is poor. He cannot feed, clothe, care for, or support himself. His health care costs are $145 per day. Wanda Click testified that she had suffered a collapsed lung but was otherwise in good physical health. She testified that she supports her two minor children from a prior marriage who reside with her. She stated that she works full time, earning $4 per hour and that her monthly expenses are $2,625. Wanda also testified that she owes approximately $30,000 to her mother and $15,000 to her brother, a large portion of which money she claimed she and Robert borrowed to purchase the marital residence. The trial court indicated that it did not find the testimony regarding those debts credible, however. We recognize that it is the function of the trial court to assess the credibility of the witnesses and determine the weight to be afforded their testimony. (See, *e.g.*, *In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 174-75.) In light of Wanda's incomplete and self-serving testimony regarding her financial resources, we find the trial court's finding warranted.

Wanda testified that the funds she received from her mother were loans, yet she kept no record of the amounts loaned. In addition, her name appeared with her mother's on several well-funded checking accounts which Wanda claimed belonged exclusively to her mother. And while Wanda produced her own check registers and testified regarding them, the registers showed only disbursements; she stated that she does not record her deposits. The trial court may therefore have concluded that Wanda was not indebted to the extent she claimed to be and that she had undisclosed financial resources. We therefore cannot agree with Wanda's contention that the court failed to adequately consider the needs of the parties. We find the award justified in light of the full factual background and particularly upon consideration of Robert's tragic and complete disability and lack of future employment

prospects. (See, *e.g.*, *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190; *In re Marriage of Clearman* (1981), 97 Ill. App. 3d 641.) The apportionment of property made by the trial court was not an abuse of discretion.

Petitioner's final contention is that the court erred in excluding her testimony regarding her payment of $10,000 in legal fees, prior to the marriage, to an attorney representing Robert in a criminal appeal. We believe the court correctly excluded the evidence as irrelevant.

The Act provides for the reimbursement of contributions made from one party's nonmarital property to the marital estate. (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(2); see also *In re Marriage of Key* (1979), 71 Ill. App. 3d 722.) Marital property may include property acquired in contemplation of marriage, and reimbursement is appropriate for contributions made prior to the marriage for such acquisitions. (See, *e.g.*, *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 99-100.) Wanda characterizes her payment as a contribution of nonmarital property to the marital estate in contemplation of marriage. Wanda's contribution, however, was not made toward the acquisition of property and therefore was not a contribution to the marital *estate*. Rather, the funds were expended to acquire an attorney's services. They were not traceable to any marital property from which they could be repaid. *Cf. In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 777 (requiring the tracing of nonmarital funds into otherwise marital property in order to reclassify that property as nonmarital).

In light of our conclusion that the evidence was properly excluded, we find it unnecessary to address petitioner's further contention that the trial court erred in leaving the room while her attorney made an offer of proof before the court reporter regarding that testimony.

For the reasons stated above, the judgment of the Circuit Court of Kane County is affirmed.

Judgment affirmed.

NASH and REINHARD, JJ., concur.