GLUTH BROTHERS CONSTRUCTION, INC., *et al.*, Plaintiffs-Appellees,
v. UNION NATIONAL BANK, Defendant-Appellant.

Second District    No. 2—89—0352

Opinion filed December 29, 1989.

Robert A. Chapski, of Law Office of Robert A. Chapski, Ltd., of Elgin (Randy K. Johnson, of counsel), for appellant.

Caldwell, Berner & Caldwell, of Woodstock (James E. Berner, of counsel), for appellees.

JUSTICE INGLIS delivered the opinion of the court:
Defendant, Union National Bank, appeals from an order of the

circuit court of McHenry County entering judgment in favor of plaintiffs, Gluth Brothers Construction, Inc., and Wayne E. Zimmerman, d/b/a Wayne E. Zimmerman Construction, in the sum of $195,609.56, plus interest and costs. Defendant also appeals from the circuit court's order denying its petition filed pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). On appeal, defendant contends that: (1) the trial judge acted improperly in not recusing himself from the case given that plaintiffs' attorney was the chairman, and the attorney's wife, the treasurer, of the judge's lawyers committee (a campaign committee); and (2) it is entitled to a setoff on the judgment entered for the amounts plaintiffs received as creditors in a bankruptcy proceeding. We affirm in part, reverse in part, and remand.

The facts in this case were set out in a previous opinion issued by this court. (*Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18.) We will only set out additional facts pertinent to the issues present in this appeal.

On August 19, 1982, plaintiffs filed a two-count complaint in the circuit court of McHenry County alleging that defendant, Union National Bank, improperly set off $195,609.56 in funds deposited by Valley Engineering Company (Valley). Plaintiffs alleged that the funds were the proceeds of a joint venture comprised of plaintiffs and Valley and, as such, constituted trust funds which were beyond defendant's reach. On October 27, 1982, plaintiffs filed a motion for a change of venue, which was subsequently granted. The case was thereafter assigned to the Honorable Roland A. Herrmann.

On May 21, 1985, plaintiffs were granted leave to file an amended complaint adding count III. In addition, plaintiffs requested leave to file a jury demand. On June 10, 1985, Judge Herrmann heard arguments on plaintiffs' jury demand and thereafter denied plaintiffs' request. The case proceeded to trial.

Following a bench trial, the trial court found in favor of plaintiffs and entered judgment against defendant in the amount of $334,380.86, plus $156,968.92 in interest, for a total award of $491,349.78. On appeal, this court affirmed the trial court as to liability but reversed as to damages. On remand, the trial court was instructed to enter judgment for plaintiff in the amount of $195,609.56, plus interest at the then current prime rate. *Gluth Brothers*, 166 Ill. App. 3d at 29-30.

On September 15, 1988, the appellate court mandate was filed in the circuit court of McHenry County. On October 6, 1988, defendant filed a motion for a setoff, alleging that a Federal judge in Valley's

bankruptcy proceeding distributed over $180,000 to plaintiffs as a creditor of Valley. On the same day, plaintiffs filed a motion objecting to the setoff, contending that the circuit court did not have jurisdiction to deviate from the appellate court mandate.

On October 14, 1988, defendant filed a motion for a change of venue, alleging that plaintiffs' attorney had a "long-standing" relationship with Judge Herrmann and, as a result, defendant was entitled to a new trial before a different judge. On the same day, Judge Herrmann recused himself from the case, and the case was subsequently assigned to the Honorable Ward S. Arnold.

On November 29, 1988, plaintiffs filed a motion to enter judgment pursuant to the appellate court mandate. On December 2, 1988, defendant filed a petition pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) to "vacate and/or refuse to enter judgment." On December 19, 1988, a hearing was held, after which the trial court denied defendant's request for a setoff and awarded plaintiffs $195,609.56, plus interest and costs. The court also denied defendant's request for a new trial, finding that defendant had failed to establish any actual prejudice as a result of the relationship between Judge Herrmann and plaintiffs' attorney. Defendant's motion for reconsideration was denied, and this appeal followed.

Defendant's first contention on appeal is that it was entitled to a new trial due to the relationship between Judge Herrmann and plaintiffs' attorney. Defendant alleges that this relationship was not disclosed to defendant before trial and, consequently, made it impossible for defendant to receive a fair trial.

It is undisputed that plaintiffs' attorney served as the chairman of the Executive Committee Lawyers For Herrmann in 1976. In addition, the attorney's wife served as the treasurer of the same committee. At no time during the trial did Judge Herrmann advise defendant of this relationship. It is on these facts that defendant based its section 2—1401 petition for a new trial.

The trial court denied defendant's petition, stating that Judge Herrmann was not required to recuse himself from the case. As such, the court held that "the motion is not well taken unless Union National Bank [defendant] can show something in conjunction with his [the trial judge's] refusal or lack of disqualification which would bolster its argument that he was not impartial or that he showed partiality to one side or the other."

Defendant contends that the trial court erred by requiring "actual prejudice" in a case in which an appearance of impropriety was

present. In addition, defendant argues that, even assuming *arguendo* that it was necessary to show actual prejudice, such a showing was demonstrated in the present case.

Plaintiffs respond by arguing that defendant's section 2—1401 petition did not meet the statutory requirements and thus was not sufficient to obtain relief. In particular, plaintiffs allege that the petition was not supported by an affidavit and did not allege that defendant had a meritorious defense.

■■ ■ A section 2—1401 petition must set forth facts showing the existence of a meritorious defense and must be supported by an "affidavit or other appropriate showing as to matters not of record." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401(b); *In re Petition of the Village of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 544-45.) In addition, due diligence in presenting both a defense at trial and the petition to vacate must be demonstrated. (*Carroll Service Co. v. Schneider* (1986), 144 Ill. App. 3d 38, 40.) Plaintiffs do not contend that defendant was not diligent; thus, we will not consider this requirement on appeal.

■ We disagree with plaintiffs' contention that defendant's petition did not satisfy the statutory requirements under section 2—1401 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). Defendant attached copies of Judge Herrmann's election commission reports to the petition, thus satisfying the requirement that the petition be supported by an "appropriate showing." In addition, the allegation that defendant did not receive a fair hearing before an impartial trier of fact satisfies the requirement of a meritorious defense. In *Brewer v. Moore* (1984), 121 Ill. App. 3d 423, the court determined that a section 72 petition (the predecessor of a section 2—1401 petition) should be utilized to prevent injustice, including preventing the enforcement of an unfair or unjust judgment. (*Brewer*, 121 Ill. App. 3d at 428-29.) Furthermore, in *Village of Kildeer*, our supreme court stated that a section 2—1401 petition should be utilized to "avoid unjust, unfair or unconscionable circumstances." (*Village of Kildeer*, 124 Ill. 2d at 542.) In the present case, defendant alleged that it did not receive a fair trial due to the trial judge's relationship with plaintiffs' attorney. With these considerations of fairness and justice in mind, it is our opinion that defendant's petition satisfied the requirements of section 2—1401 of the Code.

■ We next consider whether the trial court erred in denying defendant's section 2—1401 petition. Whether a section 2—1401 petition should be granted or denied lies within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent

an abuse of discretion. *Village of Kildeer*, 124 Ill. 2d at 544; *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221.

In the case at bar, defendant argues that the trial court abused its discretion in denying its section 2—1401 petition given the fact that plaintiffs' attorney worked as Judge Herrmann's campaign manager in 1976. Thus, according to defendant, it was incumbent upon Judge Herrmann to disclose to defendant the nature of his relationship with plaintiffs' attorney, and the failure to do so created an appearance of impropriety which deprived defendant of its right to a fair trial.

■■ At the time of trial, Supreme Court Rule 61 (103 Ill. 2d R. 61) governed the standards of judicial conduct. Rule 61(c)(4) provided, in pertinent part:

> "A judge's official conduct should be free from impropriety and the appearance of impropriety; *** and his personal behavior, not only upon the Bench and the performance of judicial duties, but also in his everyday life, should be beyond reproach." (103 Ill. 2d R. 61(c)(4).)

Effective January 1, 1987, the Illinois Supreme Court adopted a new Code of Judicial Conduct (Judicial Code) (107 Ill. 2d Rules 61 through 68). Canon 2 of the Judicial Code states that a judge should avoid impropriety and the appearance of impropriety in all of his or her activities. (107 Ill. 2d. R. 62.) In addition, Canon 3 governs situations in which a judge should disqualify himself from a proceeding in which his impartiality may reasonably be questioned, including a situation in which the judge "has a personal bias or prejudice concerning a party or his lawyer." 107 Ill. 2d R. 63(C)(1)(a).

■■ After a review of the above-stated supreme court rules, we disagree with defendant's contention that there is an appearance of impropriety in this case. We make this determination after considering that Judge Herrmann was not obligated to inform defendant that plaintiffs' attorney served as the judge's campaign manager in the 1976 campaign, nearly six years before the complaint in the present case was filed. In addition, Judge Herrmann complied with all applicable election disclosure laws by filing a copy of his political committee's statement of organization, along with financial disclosure reports, with the State Board of Elections in Springfield. These documents were public knowledge and apparently were the method by which defendant initially became aware of the judge's relationship with plaintiffs' attorney.

Defendant cites several cases from other jurisdictions to support its position that the relationship in the present case created an ap-

pearance of impropriety. In *Caleffe v. Vitale* (Fla. App. 1986), 488 So. 2d 627, one of the attorneys involved in the case was the cochairman of the judge's pending reelection committee. The court held that this relationship created an appearance of impropriety requiring the judge to disqualify himself from the case at issue. (*Caleffe*, 488 So. 2d at 629.) The court based its decision on the fact that the attorney "is actually running the judge's ongoing reelection campaign." 488 So. 2d at 629.

In *Stephens v. Stephens* (1982), 249 Ga. 700, 292 S.E.2d 689, the judge's son was an attorney in the law firm which was representing one of the parties. The court held that the father-son relationship would require the judge to disqualify himself in any case in which any partner or associate of the law firm which employs his son actively participates. (*Stephens*, 249 Ga. at 703, 292 S.E.2d at 692.) The court determined that the judge's impartiality "might reasonably be questioned" solely on the basis of the father-son relationship, even though his impartiality was not called into question by any other facts. *Stephens*, 249 Ga. at 701-04, 292 S.E.2d at 691-92.

Likewise, in *SCA Services, Inc. v. Morgan* (7th Cir. 1977), 557 F.2d 110, the judge's brother was a senior partner in the law firm representing one of the parties. The court determined that this relationship was sufficient to create an appearance of impropriety in the public's mind. (*SCA Services*, 557 F.2d at 116.) The court reasoned that the "natural assumption" that the brothers would be inclined to support each other's interests would not "reassure a public already skeptical of lawyers and the legal system." 557 F.2d at 116.

Defendant correctly points out that each of the cases discussed above involve a judge's relationship with an attorney which lead to an appearance of impropriety. However, the common theme in each of the cases was that the judge had a present, ongoing relationship with the attorney while the case was still pending. Thus, the courts held that it was reasonable to conclude that an appearance of impropriety existed in situations which involved a current relationship between the judge and one of the attorneys.

In the present case, there was no allegation, or any evidence to support such an allegation, that plaintiffs' attorney had a present, ongoing relationship with the judge as his campaign manager, or in any other capacity. Rather, the evidence indicated that the relationship existed solely for Judge Herrmann's 1976 election campaign, a campaign which ended nearly six years *before* the complaint in the case at bar was filed. Absent any such evidence, and given that the attorney's position as chairman of Judge Herrmann's lawyers com-

mittee in 1976 was a matter of public record, it is our opinion that there was no appearance of impropriety in this case.

Defendant also argues that it demonstrated the actual prejudice of Judge Herrmann during the course of the trial. This court has recently determined that a showing of actual prejudice is necessary to obtain a change of venue after the judge has made a substantive ruling in the case. (*In re Marriage of Click* (1988), 169 Ill. App. 3d 48, 53.) In *Click*, the petitioner, represented by the same attorney who is representing defendant in the case at bar, alleged that the trial judge was biased due to his relationship with respondent's attorney in an "exclusive" organization (The American Academy of Matrimonial Lawyers). (*Click*, 169 Ill. App. 3d at 52.) This court held that the trial judge was not required to recuse himself from the case or disclose his membership in the organization. (*Click*, 169 Ill. App. 3d at 53.) We noted that the fact that the judge and attorney were acquainted was not an adequate demonstration of actual prejudice. *Click*, 169 Ill. App. 3d at 53.

In addition, in *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, the court determined that the defendant was not entitled to a change of venue simply because a partner in the law firm representing the plaintiff was the treasurer of the judge's election campaign in 1982. (*Malawy*, 150 Ill. App. 3d at 568-69.) The court failed to find any evidence demonstrating actual prejudice which would warrant such a change of venue. *Malawy*, 150 Ill. App. 3d at 569.

A review of the record in the present case leads us to the conclusion that defendant failed to demonstrate actual prejudice which would entitle it to a new trial. Defendant argues that the judge made several "inappropriate" remarks during the liability portion of the case, and then awarded plaintiffs damages based on defendant's liability. A review of the record presented on this appeal fails to reveal any "inappropriate" remarks made by the judge which thereby caused prejudice to defendant. As such, we do not agree with defendant's contention that it demonstrated actual prejudice, and thus agree with the trial court's conclusion that defendant was not entitled to a new trial based upon an appearance of impartiality.

Defendant also contends that the trial court erred in entering judgment pursuant to this court's mandate without first granting defendant a setoff for the amount plaintiffs recovered in Valley's bankruptcy proceeding. Defendant argues that the setoff was necessary to prevent plaintiffs from receiving a "double recovery." Defendant also made a "double recovery" argument in its section 2—

1401 petition, noting that the amount recovered in the bankruptcy proceeding was not known until after this court issued its mandate.

Plaintiffs argue that defendant is not entitled to a setoff for any amounts recovered in the bankruptcy proceeding, contending that defendant failed to offer any evidence to the trial court showing that it is entitled to such a setoff. Plaintiffs further argue that refusing to grant defendant a setoff will not result in any "double recovery" given that plaintiffs proved damages in their claim in the Valley bankruptcy proceeding in excess of defendant's liability to plaintiffs in the present case.

Initially, we note that defendant made a similar argument in the prior appeal regarding a setoff from the amounts plaintiffs recovered in the Valley bankruptcy proceeding. We determined that the trial court did not err in failing to deduct the amount that plaintiffs would receive from the bankruptcy proceeding because plaintiffs had not yet received any money from the proceeding. (*Gluth Brothers*, 166 Ill. App. 3d at 29.) However, plaintiffs have now received their share of the claims in the bankruptcy proceeding, so we will reconsider defendant's argument concerning its entitlement to a setoff.

■■ ■ Plaintiffs contend that the trial court did not have jurisdiction to award defendant a setoff, arguing that the court was required to enter judgment pursuant to the appellate court mandate. The mandate of an appellate court is its judgment which, when transmitted to the trial court, revests that court with jurisdiction. Thereupon, a trial court must follow the specific directions of the appellate court's mandate to the letter to insure that the decree is congruent with the decision of the higher court. (*PSL Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 308-09.) Normally, the correctness of a trial court's action on remand is determined from the appellate court's mandate as opposed to the appellate court's opinion. However, if the direction is to proceed in conformity with the opinion, the content of the opinion then becomes significant. The trial court may only do those things directed in the mandate and has no authority to act beyond the dictates of the mandate. *PSL Realty Co.*, 86 Ill. 2d at 308-09.

■ Where the directions of a reviewing court are specific, a positive duty is placed upon the court to which the cause is remanded to enter an order or decree in accord with the directions contained in the mandate. (*Thomas v. Durchslag* (1951), 410 Ill. 363, 365.) In the present case, the directions concerning the entry of the judgment were specific, and the trial court had no authority to grant additional relief. Thus, the trial court did not err in entering judgment pursu-

ant to this court's mandate.

We next consider whether the trial court erred in denying defendant's request for a setoff in its section 2—1401 petition. Defendant argues that the trial court should have granted its request for a setoff to prevent plaintiffs from receiving a "double recovery." A review of the record in the case at bar now indicates that plaintiffs could receive the following amounts in damages:

| | |
|---|---|
| Judgment in Present case, unpaid— | $195,609.56 |
| Claim paid in Bankruptcy case— | $182,465.35 |
| Total Recovery, if judgment is paid— | $378,074.91 |

However, plaintiffs point out that the amount recovered in the bankruptcy proceeding was far less than the $334,380.31 in damages actually proved in the bankruptcy proceeding. Plaintiffs contend that they are entitled to a full recovery for $334,380.31 in damages proved, which is in excess of the $195,609.56 recoverable against defendant in the present case. It is plaintiffs' position that allowing them to retain the judgment in the present case, along with the amount recovered in the bankruptcy proceeding, will not result in a double recovery or a "windfall."

Defendant contends that the $195,609.56 judgment represented the amount of money plaintiffs had to pay the creditors of Valley as a result of defendant's improper setoff of the money in the trust account. Since plaintiffs paid the creditors, they were entitled to submit a claim in the Valley bankruptcy proceeding to recoup the amount paid. In fact, plaintiffs did receive $182,465.34 from the Valley bankruptcy proceeding. Thus, according to defendant, plaintiffs should not be permitted to retain the money from the bankruptcy proceeding in addition to the judgment entered in the present case. To do so would improperly award plaintiffs a double recovery for the same alleged injury.

Both parties agree that Illinois courts will allow a plaintiff to recover only once for any particular injury. (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558; *Brown v. Timpte, Inc.* (1985), 137 Ill. App. 3d 1053, 1057.) To allow otherwise would bestow a windfall on the plaintiff and would be tantamount to a double recovery. *Dial*, 81 Ill. 2d at 558.

Applying these principles to the case at bar, it is our opinion that the trial court should now consider if a setoff is required to avoid duplication of monetary damages. A reading of our prior opinion in this case indicates that we stated that there was no evidence of any double recovery because plaintiffs had not yet recovered any

money from the bankruptcy proceeding. (*Gluth Brothers*, 166 Ill. App. 3d at 29.) The evidence now indicates that plaintiffs have received such a recovery. However, a review of the record does not indicate whether the bankruptcy recovery was in fact from the same claim as that present in the case at bar. Given that it is impossible for us to make such a determination from the record on appeal, we have no alternative but to remand this case back to the trial court to determine whether plaintiffs have received a double recovery in this case.

On remand, the trial court should determine whether the recoveries in the bankruptcy proceeding and this case did actually arise from the same claim. If so, the court should award defendant a setoff against the $195,109.56 judgment to avoid a double recovery. If the court determines that two different claims are involved, no setoff is then required and the judgment for plaintiffs in the amount of $195,109.56 should stand. In either case, plaintiffs are entitled to interest on the judgment at the then current prime rate.

For the above stated reasons, the judgment of the circuit court of McHenry County denying defendant's request for a new trial based on the trial judge's appearance of impropriety is affirmed. The order entering judgment on this court's mandate is also affirmed. However, that portion of the order denying defendant's request for a setoff (based on section 2—1401 of the Code) is reversed, and the cause is remanded for a determination of whether defendant is entitled to a setoff for the amount of money plaintiffs recovered in the bankruptcy proceeding.

Affirmed in part; reversed in part and remanded.

UNVERZAGT, P.J., and REINHARD, J., concur.