## S09C1879. FRIENDS OF THE CHATTAHOOCHEE, INC. et al. v. LONGLEAF ENERGY ASSOCIATES et al.

(684 SE2d 632)

NAHMIAS, Justice, statement regarding recusal.

I recently was appointed as a Justice of this Court. My wife, Catherine M. O'Neil, is an equity partner in the Business Litigation Section of the Atlanta office of King & Spalding LLP, a large international law firm that periodically represents parties in cases that come before this Court. I have recognized, of course, that this relationship raises issues regarding my potential disqualification to hear such cases, and my initial inclination was simply to disqualify myself from all cases in which King & Spalding represents a party. However, I also recognize that I have an obligation not to disqualify myself without good cause, see, e.g., *Jones County v. A Mining Group*, 285 Ga. 465, 467 (678 SE2d 474) (2009) (judge's duty to deny non-meritorious motion to recuse is equal to duty to grant meritorious motion); *Laird v. Tatum*, 409 U. S. 824, 837 (93 SC 7, 34 LE2d 50) (1972) (judges have a duty to sit when not disqualified that is equally as strong as the duty not to sit when disqualified). I also believe it is important to minimize, to the extent consistent with my ethical obligations, the opportunities for parties and their counsel to control which judges decide their cases. See *Jones County*, 285 Ga. at 466 (disqualification is not based upon " 'the perception of either interested parties or their lawyer-advocates, seeking to judge shop and to gain . . . advantage' ") (quoting *Baptiste v. State*, 229 Ga. App. 691, 694 (494 SE2d 530) (1997)); Statement of Recusal Policy, Supreme Court of the United States (Nov. 1, 1993) (statement of seven U. S. Supreme Court Justices, noting concern about " 'strategizing' recusals, that is, selecting law firms with an eye to producing the recusal of particular Justices") (hereafter "U. S. Supreme Court Recusal Policy").[1]

---

[1] I note, however, that disqualification of a Justice has less impact on the functioning of this Court than on courts like the U. S. Supreme Court, and the risks of judge-shopping are also reduced, by our ability to replace a disqualified Justice with a judge from the Court of Appeals or a superior court and by the fact the parties do not know the identity of that substitute judge in advance. See Georgia Constitution of 1983, Art. VI, Sec. VI, Par. I; OCGA § 15-2-2; Rule 57 of the Supreme Court of Georgia.

Since joining the Court, I have not participated in any case in which King & Spalding attorneys represent a party, while I studied these issues. The motion for my recusal that was filed in this case, entirely appropriately, provides the opportunity to set forth my conclusions. While it is unusual, and perhaps unprecedented, for a Justice of this Court to explain his or her reasons for recusal in a published statement, I do so primarily because this issue has already arisen in several cases and is likely to continue arising with some regularity, and I believe it is appropriate to provide notice to potentially affected parties and their lawyers of my reasoning and how I plan to deal with such cases in the future. However, in cases in which I have disqualified myself or decided not to participate on other grounds, I have not provided an explanation of my decision, nor do I expect to do so in the future. Likewise, I do not wish to suggest that explaining a judge's reasons for disqualification or non-participation in a case would be "desirable or even appropriate in any but the peculiar circumstances present here," *Laird v. Tatum*, 409 U. S. at 824.

The rules for disqualification of judges and Justices in this State are set out in OCGA § 15-1-8 and the somewhat broader Canon 3 (E) of the Georgia Code of Judicial Conduct. *Jones County*, 285 Ga. at 465. The statute and Canon have provisions that mandate disqualification in certain specific situations involving judges and their relatives. For example, Canon 3 (E) (1) (c) (ii) requires disqualification where a judge's spouse or other relative within several degrees of relationship "is acting as a lawyer in the proceeding." However, that provision has been interpreted to apply only when the relative is *personally* and *currently* representing a party in a case before the judge, not when the relative's law firm is involved or even when the relative represented a party earlier in the litigation. See Leslie W. Abramson, *The Judge's Relative Is Affiliated with Counsel of Record: The Ethical Dilemma*, 32 Hofstra L. Rev. 1181, 1194 (2004) (" 'It is well established that this provision requires personal participation in the representation, and not just membership in the representing firm. It is also apparent, from the use of the present tense, that current participation as a lawyer, and not merely past involvement in earlier stages of the litigation, is required.' ") (quoting U. S. Supreme Court Recusal Policy) (citation omitted). That is not the situation in this case, as my wife has not personally represented respondents at any point in this litigation. Nor is it a situation that I would expect to arise often, given that my wife's practice focuses more on trial litigation and government investigations than on appeals and, while it occasionally involves matters in Georgia state courts that could ultimately reach this Court, it extends nationally and involves considerable work in federal courts.

The statute and the Canon also mandate disqualification when the judge is "pecuniarily interested" in a case, OCGA § 15-1-8 (a) (1), or when the judge's spouse or other relative "is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding," Canon 3 (E) (1) (c) (iii). Because my wife is an equity partner who normally shares in King & Spalding's profits from all cases, as opposed to being on a more fixed salary, these provisions would likely require my disqualification from all cases in which King & Spalding represents a party here, unless perhaps if the firm's fees from the Supreme Court representation were such as to make my wife's share of them de minimis, or the firm were serving as counsel pro bono, or a mechanism were established by which my wife is "walled off" from any profits derived from such appellate litigation. See U. S. Supreme Court Recusal Policy (explaining that the Justices will not recuse from cases involving law firms at which their "spouses, children or other relatives within the [covered] degree of relationship" are partners who did not personally work on the case and where "we have received from the firm written assurance that income from [all] Supreme Court litigation is, on a permanent basis, excluded from our relatives' partnership shares").

Even if my wife's financial interests as a partner did not disqualify me, some courts have held that the "interests" at issue in Canon 3 (E) (1) (c) (iii) also include a partner's interest in the reputational and goodwill benefits of cases handled by other lawyers in the firm. See, e.g., *Potashnick v. Port City Constr. Co.*, 609 F2d 1101, 1113-1114 (5th Cir. 1980); see also Committee on Codes of Conduct Advisory Opinion No. 58, Disqualification in a Case in Which a Relative Is Employed by a Participating Law Firm (Aug. 9, 1978; revised July 10, 1998) (concluding that "an equity partner in a law firm generally has 'an interest that could be substantially affected by the outcome of the proceeding' in all cases where the law firm represents a party before the court"). Petitioners' motion to recuse notes the potential of such interests in this case, and they may exist in other significant or high-profile cases as well.

Resolving these issues, however, turns out to be beside the point, because Canon 3 (E)'s list of specific instances mandating disqualification is non-exclusive. As the commentary to Canon 3 (E) (1) (c) makes clear, regardless of a relative's personal participation or substantial interest in a case, judges still must disqualify themselves "in any proceeding in which their impartiality might reasonably be questioned," pursuant to Canon 3 (E) (1). In *Stephens v. Stephens*, 249 Ga. 700 (292 SE2d 689) (1981), this Court interpreted Canon 3 (E) (1) to require the disqualification of a judge whose *son* was a *salaried associate* at the law firm representing a party in a case. Id. at 701-703. The Court required the judge to disqualify based solely

upon the "first-degree," father-son familial relationship, despite the absence of any "factual contentions leading to the conclusion that the judge's 'impartiality might reasonably be questioned' " and where "it [was] clear that no direct monetary or other advantage would accrue to the son as a result of a ruling favorable to the son's employer's client." Id. at 702-703. This holding was supported by an advisory opinion of our Judicial Qualifications Commission. Id. at 703 (citing JQC Opinion No. 20 (Nov. 2, 1977)).

As petitioners correctly argue, it follows a fortiori from *Stephens* that disqualification is required where a judge has a *wife* who is an *equity partner* at the law firm representing a party to a case. See *Smith v. Beckman*, 683 P2d 1214, 1216 (Colo. Ct. App. 1984) (presuming that a marriage relationship between a judge and his prosecutor-spouse required recusal, without any other facts suggesting partiality, because the public views married people as a personal and financial "partnership" that is "more intimate than any other kind of relationship between individuals"); cf. *Stephens*, 249 Ga. at 703 (suggesting that the judge's son being a partner rather than an associate would make the need for disqualification even stronger). But cf. *Adair v. State of Michigan*, 709 NW2d 567 (Mich. 2006) (denying motion to recuse two Michigan Supreme Court Justices where the state Attorney General's office, for whom the Justices' wives worked as attorneys, represented parties in the case).

Two Justices dissented in *Stephens*, 249 Ga. at 704, with Justice Clarke contending that per se disqualifications are "not only harsh, they most often lead to impractical results," id. at 704 (Clarke, J., dissenting). And others have criticized the per se disqualification of judges because their relatives are equity partners, instead favoring an examination of the circumstances of particular cases, including the extent of the relative's interest in the case in the context of huge national law firms rather than the smaller-town, small-firm context of cases such as *Stephens*. See, e.g., *Pashaian v. Eccelston Properties*, 88 F3d 77, 83 (2nd Cir. 1996) (where the judge's brother-in-law was a partner at a New York law firm which then had 60 partners and revenues of $117 million, his interest in the outcome of a case handled by the firm was not substantial and did not require the judge's recusal).[2]

Nevertheless, it is imperative that the public have faith and trust in the impartiality of the justice system, *Stephens*, 249 Ga. at

---

[2] In this respect, it is worth noting that King & Spalding LLP reportedly has more than 800 lawyers, including about 150 equity partners, in 13 offices around the world, and the firm's worldwide revenues in 2007 exceeded $600 million. Consequently, even cases that may generate large fees or be considered "high-profile" will rarely have a significant impact on the firm's overall profits, reputation, or goodwill, much less on my wife's proportionally-minimal share of those interests.

702, and any "appearance of impropriety" that may exist is enhanced where the relative at issue is the judge's spouse. Therefore, I will disqualify myself from any case in which King & Spalding lawyers are actively representing a party before this Court, including this case.[3] In such cases, no motion to disqualify me needs to be filed; however, if it appears that I have inadvertently overlooked such representation, a motion or a simple letter to our Clerk, copying opposing counsel and advising of that fact, will be welcome.

If in a future case the parties and their lawyers, aware of the basis for my disqualification expressed in this statement, all agree that I should not be disqualified, they should file a motion to that effect, attaching their agreement signed by both the parties and their counsel. See Canon 3 (F). The motion should explain in particular whether, in the parties' joint view, I or my wife have a pecuniary or other "substantial interest" in the case. I will not solicit, seek, or hear comment on such possible remittal or waiver of disqualification. Id. Upon the filing of such a motion, I will decide, in the first instance, whether I am willing to participate in the case, id., subject to the ultimate decision of the Court.

ORDERED OCTOBER 5, 2009.

---

[3] I express no opinion as to whether my disqualification may be required or appropriate where King & Spalding attorneys have a more tangential or less active role in a case. I will address any such cases as they arise.